



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **EHAB ALLABABIDI**, <br>   *Plaintiff,* <br><br>   v. <br><br> **CROSSCOUNTRY MORTGAGE, LLC** <br> **RICHARD KIMBALL** <br> **SEAN ROBERTSON** <br> **GATEVILLE LAW FIRM** <br> **REPUBLIC NATIONAL TITLE** <br>   *Defendants.* | **Case No.: 1:26-cv-_____** <br> **Judge:_____** <br> **Magistrate:_____** <br><br> **JURY TRIAL DEMANDED** <br><br> 1:26-cv-02614 <br> Judge Jeremy C. Daniel <br> Magistrate Judge Jeannice W. Appenteng <br> RANDOM / Cat. 2 |

**VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF,**
**AND TREBLE DAMAGES UNDER 18 U.S.C. § 1964(c)**

18 U.S.C. §§ 1962(c)-(d) (Civil RICO) · Aiding and Abetting Fraud
Uniform Voidable Transactions Act (740 ILCS 160/) · Declaratory Judgment
Four Counts with Jury Demand

## I. PRELIMINARY STATEMENT

1. A $215,000 interstate mortgage cannot originate from a layman's kitchen table. It requires an attorney to build the anonymous Wyoming shell company that launders the title. It requires a title gatekeeper to approve the irregular four-transaction chain and issue a title commitment despite three consecutive $10.00 quit claim deeds through a deliberately misspelled entity. And it requires an underwriter to fund a wire transfer on a "zero-day flip" — a property that arrived in the borrower's name on the same day the mortgage was recorded — without triggering a single Suspicious Activity Report. This Complaint names the architects, the gatekeepers, and the underwriters who made the theft of Plaintiff's family home possible.

2. This action arises from a structured title-laundering scheme that extracted $215,000 in equity from the Plaintiff's family home at 8516 W. Winona St., Chicago, IL 60656 (PIN: 12-11-314-023-0000) — property that was held free and clear in the Ehab Allababidi Family Trust for four years before being stripped through a four-transaction, three-county, two-state chain involving an anonymous Wyoming LLC with a **deliberately misspelled entity name**, a **same-day self-dealing reverse transfer**, and a **$215,000 mortgage from an out-of-state lender**. The math is devastating: three recorded deeds, each for $10.00 stated consideration and $0.00 transfer taxes, followed by a $215,000 mortgage — a **21,500:1 ratio** between the stated value of the underlying transactions and the loan amount. No legitimate refinance produces this ratio. No compliant lender funds it.

## TABLE OF CONTENTS

| | |
|---|---|
| **TABLE OF AUTHORITIES** | **3** |
| **INTRODUCTION: THE ARCHITECTURE OF A TITLE LAUNDERING SCHEME** | **5** |
| **JURISDICTION AND VENUE** | **6** |
| **PARTIES** | **6** |
| A. Plaintiff | **6** |
| B. Defendants | **6** |
| C. The Unwitting Instrument — Nur Allababidi | **7** |
| **STATEMENT OF FACTS** | **8** |
| A. The Chain of Title — Forensic Deconstruction | **8** |
| B. The Wyoming Shell Company — Anatomy of Concealment | **9** |
| C. The Ghost Tenant Paradox — Robertson's Denial | **10** |
| D. The Zero-Day Flip — Same-Day Recording Anomaly | **11** |
| E. The Four-Firm Compartmentalization | **11** |
| F. CrossCountry Mortgage — Willful Blindness | **12** |
| G. Republic National Title — The Gatekeeper | **14** |
| H. The SAR Cascade — Four Triggers, Zero Filings | **14** |
| I. The Five-Year Stewardship Contrast | **15** |
| **COUNT I: RICO — The Title Laundering Enterprise** | **16** |
| A. The Enterprise | **16** |
| B. Pattern of Racketeering Activity | **16** |
| C. Relatedness and Continuity | **17** |
| D. Conduct of the Enterprise | **17** |
| E. RICO Injury and Causation | **18** |
| F. RICO Conspiracy — 18 U.S.C. § 1962(d) | **18** |
| **COUNT II: Aiding and Abetting Fraud** | **18** |
| **COUNT III: Uniform Voidable Transactions Act** | **20** |
| Six Badges of Fraud | **20** |
| **COUNT IV: Declaratory Judgment — Void Mortgage (Nemo Dat)** | **21** |
| **PRAYER FOR RELIEF** | **23** |
| **JURY DEMAND** | **24** |
| **VERIFICATION** | **25** |
| **REQUEST FOR ISSUANCE OF SUMMONS** | **26** |
| **CERTIFICATE OF SERVICE** | **26** |

# TABLE OF AUTHORITIES

### CASES

| | |
|---|---|
| *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) | Conspiracy — circumstantial evidence of agreement |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | Plausibility pleading standard |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) | Plausibility pleading standard |
| *Boyle v. United States*, 556 U.S. 938 (2009) | Association-in-fact enterprise — informal structure sufficient |
| *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) | RICO injury causation — 'by reason of' |
| *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) | RICO person vs. enterprise distinction |
| *Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861 (2d Cir. 2015) | Void mortgage — unenforceable even by bona fide purchaser |
| *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) | Multiple badges of fraud — strong presumption of fraudulent intent |
| *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) | Willful blindness standard for civil fraud |
| *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) | RICO pattern — continuity and relationship of predicates |
| *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) | RICO proximate causation |
| *In re Estate of DeJarnette*, 286 Ill. App. 3d 1082 (1st Dist. 1997) | Presumption of undue influence — nominal consideration |
| *In re Marriage of Rodriguez*, 131 Ill. App. 3d 351 (2d Dist. 1985) | Constructive trust — transferee's post-transfer conduct |
| *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987) | Aiding and abetting — substantial assistance |
| *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986) | RICO pattern — same participants, methods, purpose |
| *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479 (1979) | Constructive trust — property acquired through fraud |
| *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) | False explanation is affirmative evidence of guilt |
| *Reves v. Ernst & Young*, 507 U.S. 170 (1993) | RICO — operation or management test |
| *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) | Civil RICO — treble damages, no prior conviction required |
| *Stewart Title Guar. Co. v. Greenlands Realty, LLC*, 58 F. Supp. 3d 360 (D.N.J. 2014) | Title company constructive knowledge of irregular chain |
| *United States v. Campbell*, 977 F.2d 854 (4th Cir. 1992) | Shell entity demonstrates concealment intent |
| *United States v. Conley*, 37 F.3d 970 (3d Cir. 1994) | Compartmentalization as evidence of fraudulent scheme |
| *United States v. Jackson*, 935 F.2d 832 (7th Cir. 1991) | Interstate commerce element — money laundering |
| *United States v. Jamieson*, 427 F.3d 394 (6th Cir. 2005) | Name variations probative of intent to deceive |
| *United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976) (en banc) | Deliberate ignorance equals positive knowledge |
| *United States v. Leahy*, 445 F.3d 634 (3d Cir. 2006) | Material omission of title provenance |
| *United States v. Rybicki*, 287 F.3d 257 (2d Cir. 2002) | Fraudulent statement to federally insured lender |
| *United States v. Turkette*, 452 U.S. 576 (1981) | RICO enterprise — entirely illegal association-in-fact |
| *United States v. Wachovia Bank, N.A.*, No. 10-20165 (S.D. Fla. 2010) | BSA/AML failures — $160M penalties |
| *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771 (7th Cir. 1994) | RICO closed-ended continuity threshold |
| *Woodstock Inst. v. Ameriquest Mortg.*, No. 04 C 6085, 2006 WL 680478 (N.D. Ill. 2006) | Predatory lending — willful blindness to title irregularity |

### FEDERAL STATUTES

| | |
|---|---|
| *12 C.F.R. § 1026.35(c)* | Higher-priced mortgage loans — enhanced appraisal requirements |
| *12 U.S.C. § 5101 et seq.* | SAFE Act — mortgage originator licensing and accountability |

| | |
|---|---|
| *18 U.S.C. § 1343* | Wire Fraud |
| *18 U.S.C. § 1344* | Bank Fraud |
| *18 U.S.C. § 1956* | Money Laundering |
| *18 U.S.C. § 1961* | RICO — Definitions |
| *18 U.S.C. § 1962(c)* | RICO — Conduct of Enterprise Through Racketeering |
| *18 U.S.C. § 1962(d)* | RICO — Conspiracy |
| *18 U.S.C. § 1964(c)* | RICO — Civil Remedies (Treble Damages) |
| *28 U.S.C. § 1331* | Federal Question Jurisdiction |
| *28 U.S.C. § 1367* | Supplemental Jurisdiction |
| *28 U.S.C. § 2201* | Declaratory Judgments Act |
| *31 U.S.C. § 5311 et seq.* | Bank Secrecy Act |
| *31 U.S.C. § 5318(g)* | Suspicious Activity Reporting Requirements |
| *31 U.S.C. § 5321(a)(1)* | SAR penalties — up to $1,000,000 per violation |
| *31 U.S.C. § 5322* | Criminal penalties for BSA willful violations — up to 10 years |
| *31 U.S.C. § 5336* | Corporate Transparency Act — Beneficial Ownership |

### STATE STATUTES

| | |
|---|---|
| *735 ILCS 5/15-1501(b)* | Defective title cannot support foreclosure |
| *740 ILCS 160/* | Uniform Voidable Transactions Act (formerly UFTA) |
| *740 ILCS 160/5(a)(1)* | Actual intent to hinder, delay, or defraud |
| *740 ILCS 160/5(b)* | Badges of fraud — eleven statutory indicators |
| *805 ILCS 180/* | Illinois Limited Liability Company Act |
| *Ill. R. Prof. Conduct 8.4(c)* | Misconduct — dishonesty, fraud, deceit, or misrepresentation |
| *Wyo. Stat. § 17-29-101 et seq.* | Wyoming LLC Act — formation and secrecy |
| *Wyo. Stat. § 17-29-201* | Wyoming LLC formation — Organizer files Articles of Organization |

### REGULATORY GUIDANCE & OTHER AUTHORITIES

| | |
|---|---|
| *Fannie Mae Selling Guide § A2-1-01* | Lender representations and warranties — loan quality |
| *Fannie Mae Selling Guide § B4-1.2-04* | Property flipping — enhanced due diligence for recent acquisitions |
| *Fannie Mae Selling Guide § A2-4-02* | Lender repurchase obligations for breaching reps & warranties |
| *FinCEN Advisory FIN-2017-A003 (Aug. 22, 2017)* | Shell companies in real estate — SAR triggers |
| *FinCEN ANPRM, 86 Fed. Reg. 69,589 (2021)* | Shell companies as #1 money laundering vector in real estate |
| *31 C.F.R. § 1020.320* | SAR filing requirements for financial institutions |
| *S. Rep. No. 116-284 (2020)* | Wyoming — 'domestic equivalent of an offshore shell company' |
| *Wyo. Sec'y of State Filing ID 2024-001505519* | Wyoming 8516 West Winnoa LLC — Organizer: Sean L. Robertson |
| *Tax Justice Network Financial Secrecy Index (2022)* | Wyoming — #1 U.S. financial secrecy jurisdiction |

## INTRODUCTION: THE ARCHITECTURE OF A TITLE LAUNDERING SCHEME

1. This is a civil RICO action arising from a $215,000 interstate title-laundering scheme that stripped the equity from Plaintiff's family home. The scheme was not the product of one man acting alone. It was assembled by sophisticated professionals — a lawyer who builds anonymous Wyoming shell companies, a title company that certifies fraudulent chains of title, and a mortgage lender that funds wire transfers across state lines without performing legally mandated due diligence.

2. The property at issue — 8516 W. Winona St., Chicago, IL 60656 (PIN: 12-11-314-023-0000) — was held free and clear in the Ehab Allababidi Family Trust from May 31, 2018 through August 2022. Zero mortgages. Zero liens. Zero encumbrances. The family had paid off approximately twenty years of mortgage payments. The home was the family's primary asset.

3. In fewer than twenty-eight months, through a four-transaction, three-county, two-state chain of title involving four different law firms, the property was transferred out of the family trust, passed through an anonymous Wyoming LLC with a deliberately misspelled name ('**Winnoa**' instead of '**Winona**'), transferred back to the same individual who put it in the shell company, and encumbered with a $215,000 mortgage from CrossCountry Mortgage, LLC — an Ohio-based lender — on the **identical date** as the reverse transfer. The total cost of this mortgage over its thirty-year life: approximately **$528,000**.

4. The reverse transfer (Cook County Recorder Doc. No. 2507730026) and the mortgage (Doc. No. 2507730027) were recorded on **March 18, 2025** — the same day. This is not a refinance. This is a "**zero-day flip**" — a recognized indicator of title fraud in federal mortgage origination standards. Under 12 C.F.R. § 1026.35(c) and Fannie Mae Selling Guide § B4-1.2-04, properties acquired within 90 days of loan application require dual appraisals or enhanced documentation. Here, the borrower acquired title and recorded the mortgage on the **same day**. Zero days. CrossCountry Mortgage funded the wire transfer regardless.

5. Nur Allababidi — Plaintiff's brother — is the individual who appeared on the deed instruments. But Nur Allababidi did not form the anonymous Wyoming LLC. He did not select Wyoming — the number-one financial secrecy jurisdiction in the United States — as the formation state. He did not draft the Deed in Trust with a deliberately misspelled entity name. He did not conduct the title search. He did not originate the mortgage. A layman does not build a cross-state title-laundering architecture. Lawyers, title companies, and mortgage lenders build it. This Complaint is directed at the professionals who **made the scheme operational**.

6. The financial anatomy is equally damning. The Ehab Allababidi Family Trust dissolved its interest for $10.00 in stated consideration and $0.00 in transfer taxes. The Wyoming LLC — 8516 Winnoa LLC — was formed for a nominal filing fee in a state that requires no public disclosure of beneficial ownership. The reverse transfer back to Nur Allababidi was again recorded at $10.00 consideration with $0.00 transfer taxes. Then, on that same day, CrossCountry Mortgage funded $215,000 against a property that had

changed hands three times for a combined stated value of $30.00. The ratio between the mortgage amount and the cumulative stated consideration is **7,167:1**. No legitimate lending transaction produces this ratio. No compliant title company certifies it. No diligent loan originator signs it.

> **THE CORE THESIS:** A $215,000 interstate title-laundering scheme cannot be executed by a layman. It requires: **(1)** a lawyer (Sean Robertson / Gateville Law Firm) to construct the anonymous Wyoming shell company and draft the trust instrument; **(2)** a title gatekeeper (Republic National Title) to certify the irregular chain and issue a title commitment despite three consecutive $10.00 deeds through a misspelled entity; **(3)** an underwriter (CrossCountry Mortgage, LLC) to fund the $215,000 wire transfer across state lines on a zero-day flip without filing a Suspicious Activity Report; and **(4)** a loan originator (Richard Kimball, NMLS 145114) to sign the paperwork and put his personal federal license behind a mortgage he knew or should have known was built on a fraudulent chain of title. Each Defendant provided an indispensable link in the chain. Remove any one, and the scheme collapses.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction under 28 U.S.C. § 1331 (federal question) because this action arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), and seeks relief under 18 U.S.C. § 1964(c).

8. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because the state claims arise from the same transaction or occurrence and share a common nucleus of operative fact with the federal RICO claims.

9. Declaratory jurisdiction is proper under 28 U.S.C. §§ 2201-2202 for Count IV, which seeks a judicial declaration that the CrossCountry Mortgage is void *ab initio* under the doctrine of *nemo dat quod non habet*.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because the property at issue is located within Cook County, Illinois, the deeds were recorded in Cook County, and a substantial part of the events giving rise to the claims occurred within the Northern District of Illinois, Eastern Division.

## PARTIES

### A. Plaintiff

11. **Plaintiff EHAB ALLABABIDI** is a natural person and citizen of the State of Illinois, residing in the City of Chicago, Cook County, Illinois. Plaintiff was the sole Trustee and Beneficiary of the Ehab Allababidi Family Trust (created May 31, 2018), which held the subject property free and clear of all encumbrances from 2018 through August 2022. Plaintiff is the victim of the title-laundering scheme documented herein.

### B. Defendants

12. **Defendant CROSSCOUNTRY MORTGAGE, LLC** (NMLS 3029) is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 2160 Superior Ave., Cleveland, Ohio 44114. CrossCountry originated the $215,000 mortgage (Cook County Recorder Doc. No. 2507730027, Loan No. 30012405314281) on March 6, 2025, recorded March 18, 2025. CrossCountry is sui juris. Originator: Richard Kimball (NMLS 145114). Mortgagee of record: Mortgage

Electronic Registration Systems, Inc. ("MERS").

13. **Defendant RICHARD KIMBALL** (NMLS 145114) is, upon information and belief, a natural person and licensed mortgage loan originator who originated Loan No. 30012405314281 on behalf of CrossCountry Mortgage, LLC. Under the federal SAFE Act (12 U.S.C. § 5101 *et seq.*) and NMLS regulatory standards, Kimball bore **personal, non-delegable responsibility** to verify the borrower's *bona fides*, ensure the accuracy of the loan application, and flag suspicious transactions for anti-money laundering review. Kimball originated a $215,000 mortgage on a zero-day flip involving three consecutive $10.00 quit claim deeds through a misspelled Wyoming shell entity — and filed no Suspicious Activity Report. Kimball is sued in his individual capacity as the originator who signed the paperwork and whose NMLS license is the federal instrument that made this mortgage possible.

14. **Defendant SEAN ROBERTSON** is, upon information and belief, an attorney licensed to practice law in the State of Illinois, operating from the Gateville Law Firm at 201 E. Veterans Parkway, Unit 14, Yorkville, Illinois 60560 (Kendall County). Robertson prepared and/or supervised the preparation of the Deed in Trust (Cook County Recorder Doc. No. 2426230019) that transferred Plaintiff's family home to the anonymous Wyoming entity 'Wyoming 8516 West Winnoa, LLC.' The Wyoming LLC was filed with the Wyoming Secretary of State (Filing ID 2024-001505519), which lists Robertson as the **Organizer** — the person who drafted, signed, and filed the Articles of Organization — using his own physical law firm address at 201 E. Veterans Parkway, Unit 14, Yorkville, IL 60560. Robertson utilized a commercial registered agent service (Registered Agents Inc., 30 N. Gould Street, Suite R, Sheridan, WY 82801) to mask the entity's true origin. Despite being the Organizer of record, Robertson explicitly denied representing this entity via email. This Complaint addresses that paradox.

15. **Defendant GATEVILLE LAW FIRM** is a law firm operating at 201 E. Veterans Parkway, Unit 14, Yorkville, Illinois 60560. Gateville served as the preparer of the Deed in Trust (Doc. No. 2426230019) that effectuated the transfer of Plaintiff's family home to the Wyoming shell entity. Wyoming Secretary of State records (Filing ID 2024-001505519) list the LLC's Organizer address as the identical Gateville office address, while a commercial registered agent service (Registered Agents Inc., 30 N. Gould Street, Suite R, Sheridan, WY 82801) was used as the entity's nominal registered agent. Gateville provided the essential legal infrastructure — entity formation, deed drafting, and Organizer services — that made the title-laundering scheme operational.

16. **Defendant REPUBLIC NATIONAL TITLE** (also d/b/a Republic Title, Oak Lawn, Illinois) is a title insurance agency operating in Cook County, Illinois. Republic performed the title examination and facilitated the closing on the reverse transfer (Doc. No. 2507730026) and, by necessary implication, issued the title commitment upon which CrossCountry Mortgage relied in approving and funding the $215,000 mortgage. Republic is the gatekeeper that saw the complete four-transaction chain of title — the trust dissolution, the Wyoming shell transfer, the misspelled entity name, the three consecutive $10.00 deed considerations — and opened the gate.

### C. The Unwitting Instrument — Nur Allababidi (Non-Party)

17. **Nur Allababidi** is Plaintiff's brother and the individual who appeared as grantee on the chain of title instruments. Nur Allababidi is **not named as a Defendant** in this action. He is referenced solely as the **layman proxy** who was utilized by the sophisticated corporate Defendants to execute a scheme that required professional legal, title, and financial infrastructure he did not possess and could not have constructed.

18. The title-laundering scheme required: (a) formation of an anonymous Wyoming LLC in the number-one U.S. financial secrecy jurisdiction; (b) drafting of a Deed in Trust with a deliberately misspelled entity name; (c) multi-county compartmentalization of legal services across four separate firms; (d) a title examination certifying a profoundly irregular chain; and (e) underwriting and funding of a $215,000 mortgage on a zero-day flip. None of these acts are within the capacity of a layman acting alone. Each was performed by a named Defendant.

> **STRATEGIC NOTE — ISOLATION OF NUR ALLABABIDI:** Nur Allababidi is not named as a Defendant because Plaintiff's claims against the corporate professionals who built, certified, and funded the title-laundering scheme are independent of any claims against the individual who appeared on the deed instruments. The sophistication of the architecture — Wyoming formation, deliberate misspelling, four-firm compartmentalization, same-day recording, zero-day flip — demonstrates that this scheme was designed by professionals, not by the layman who signed the papers. The professionals are the architects. Nur is the instrument.

## STATEMENT OF FACTS

### A. The Chain of Title — Forensic Deconstruction

19. The property at 8516 W. Winona St., Chicago, IL 60656 (PIN: 12-11-314-023-0000) has undergone four recorded ownership changes in fewer than three years. Each transaction is documented by a Cook County Recorder of Deeds instrument. The following table reconstructs the complete chain of title:

| Date | Doc. No. | Transaction | From → To | Consideration | Preparer |
|---|---|---|---|---|---|
| Aug. 2022 (Rec. Nov. 9, 2022) | 2231357025 | Quit Claim Deed | Ehab (Trustee) → Nur | $10.00 Tax: $0 | Kozar Law (Elmhurst, IL) |
| Sep. 11, 2024 (Rec. Sep. 18, 2024) | 2426230019 | Deed in Trust | Nur → Wyoming 8516 West *Winnoa*, LLC | $10.00 Tax: $0 | Gateville Law (Yorkville, IL) |
| Mar. 2025 (Rec. Mar. 18, 2025) | 2507730026 | Quit Claim Deed (Self-dealing) | Wyoming LLC → Nur *(same person both sides)* | $10.00 Tax: $0 | All Ways RE (Woodstock, IL) via Republic Nat'l Title |
| Mar. 6, 2025 (Rec. Mar. 18, 2025) | 2507730027 | **Mortgage** | Nur (borrower) → CrossCountry Mtg. | **$215,000** 7.25% / 30yr | CrossCountry (Cleveland, OH) |

20. **Transaction 1 — Trust Dissolution (Doc. No. 2231357025):** In August 2022, Ehab Allababidi, as Trustee of the Ehab Allababidi Family Trust (dated May 31, 2018), executed a Quit Claim Deed transferring the property to Nur Allababidi individually for $10.00 in stated consideration. Transfer taxes: $0.00 across all categories (County,

Illinois, Chicago, CTA). The deed was prepared by Jack Kozar of Kozar Law Office, LLC in Elmhurst, Illinois (DuPage County) and notarized by Jay D. Kostecki, also of DuPage County.

21. **Transaction 2 — Wyoming Shell Concealment (Doc. No. 2426230019):** On September 11, 2024, Nur Allababidi executed a Deed in Trust transferring the property to '**Wyoming 8516 West Winnoa, LLC**' — a Wyoming limited liability company — as Trustee of 'The 8516 West Winona Trust' dated September 11, 2024. Wyoming Secretary of State records (Filing ID 2024-001505519) identify the LLC's **Organizer** as Sean L. Robertson, listing his physical address at 201 E. Veterans Parkway, Unit 14, Yorkville, Illinois 60560 — **the identical address of the Gateville Law Firm** that prepared the deed. A commercial registered agent (Registered Agents Inc., 30 N. Gould Street, Suite R, Sheridan, WY 82801) was used as the entity's formal registered agent to mask the Illinois origin. Consideration: $10.00. Transfer taxes: $0.00. The entity name deliberately misspells the street as '**Winnoa**' rather than '**Winona.**'

22. **Transaction 3 — Self-Dealing Reverse Transfer (Doc. No. 2507730026):** In March 2025, 'Wyoming 8516 West Winnoa, LLC' (as Trustee of The 8516 West Winona Trust) transferred the property back to Nur Allababidi individually as 'sole owner.' Nur Allababidi signed as **Manager of the Wyoming LLC (grantor)** while simultaneously appearing as the **individual grantee** — a textbook self-dealing transaction. The deed was prepared by Jane Bourke, a paralegal at All Ways Real Estate, LLC (Woodstock, Illinois, McHenry County) through Defendant Republic National Title (Oak Lawn, Illinois). **This deed was recorded on March 18, 2025 — the identical date as the mortgage.**

23. **Transaction 4 — $215,000 Equity Extraction (Doc. No. 2507730027):** On March 6, 2025, Nur Allababidi executed a mortgage with Defendant CrossCountry Mortgage, LLC (NMLS 3029, organized under Delaware law, headquartered at 2160 Superior Ave., Cleveland, Ohio 44114) for **$215,000.00** at a fixed interest rate of 7.250%, maturing April 1, 2055. Loan No. 30012405314281. Originator: Richard Kimball (NMLS 145114). Mortgagee of record: MERS. The mortgage was recorded on **March 18, 2025** — the identical date as the self-dealing reverse transfer.

> **CHAIN-OF-TITLE FORENSIC SUMMARY:** Four transactions. Three counties (DuPage, Kendall, Cook/McHenry). Two states (Illinois and Wyoming). Four different law firms or preparers (Kozar Law, Gateville Law, All Ways Real Estate, CrossCountry Mortgage). One property. One beneficiary: Nur Allababidi. Result: **$215,000 extracted** from a property that was in a family trust three years earlier. The compartmentalization of legal services across four separate entities is a hallmark of structured concealment. *See United States v. Conley, 37 F.3d 970, 978 (3d Cir. 1994).*

### B. The Wyoming Shell Company — Anatomy of a Secrecy Jurisdiction

24. The selection of Wyoming as the state of LLC formation is not incidental. Wyoming is the number-one financial secrecy jurisdiction in the United States. The Tax Justice Network's 2022 Financial Secrecy Index ranked Wyoming as the premier U.S. secrecy jurisdiction. The 2021 Pandora Papers investigation identified Wyoming as a preferred destination for individuals seeking to hide assets from creditors and courts. Senate testimony described Wyoming entities as 'the domestic equivalent of an offshore shell

company.' S. Rep. No. 116-284, at 12 (2020).

25. Wyoming offers: (1) no requirement to disclose LLC members or managers publicly; (2) no annual report requirement with member information; (3) charging order protection that shields LLC interests from creditor judgment execution; (4) LLCs can be formed online for approximately $100 with no in-state presence requirement; (5) nominee services are commercially available to further obscure beneficial ownership. The structure is identical to those used in international money laundering schemes that FinCEN's Corporate Transparency Act (31 U.S.C. § 5336, effective January 1, 2024) was specifically designed to combat.

26. Had Nur Allababidi formed an Illinois LLC to hold the property — the jurisdiction in which both he and the property are located — Illinois law (805 ILCS 180/) would have required public disclosure of the LLC's registered agent, manager, and organizer. Nur Allababidi chose Wyoming specifically to avoid these transparency requirements. There is no tax advantage (the property generates no income). There is no liability advantage (the property is a personal residence). The sole advantage of Wyoming over Illinois is that **Wyoming hides the owner's identity**.

27. The '**Winnoa**' misspelling amplifies the concealment. The Wyoming LLC was not merely formed in a secrecy jurisdiction — it was named with a deliberate misspelling of the property address. A creditor, litigant, or title examiner searching Cook County records for transfers involving '8516 West Winona' would not locate this entity. A search for 'Winnoa' returns nothing because the street does not exist. The misspelling transforms the Wyoming LLC from merely anonymous to effectively **invisible**. *See United States v. Jamieson, 427 F.3d 394, 403-04 (6th Cir. 2005)* (name variations in mortgage fraud scheme probative of intent to deceive).

28. **FinCEN Compliance Failure:** Under the Corporate Transparency Act (31 U.S.C. § 5336), 'Wyoming 8516 West Winnoa, LLC' was required to file a Beneficial Ownership Information (BOI) report with FinCEN disclosing its beneficial owners. Plaintiff has been unable to locate such a filing. If no BOI report was filed, the failure to report constitutes an independent federal violation carrying penalties of up to $500/day and criminal penalties of up to two years' imprisonment under § 5336(h).

## C. The Ghost Tenant Paradox — Robertson's Denial and the Organizer Record

29. Defendant Sean Robertson of Gateville Law Firm prepared the Deed in Trust (Doc. No. 2426230019) that transferred Plaintiff's family home to the Wyoming LLC. Wyoming Secretary of State records (Filing ID 2024-001505519) list Sean L. Robertson as the **Organizer** of 'Wyoming 8516 West Winnoa, LLC,' using his physical address at **201 E. Veterans Parkway, Unit 14, Yorkville, IL 60560**. This is the **identical physical address of Gateville Law Firm**. A commercial registered agent service (Registered Agents Inc., 30 N. Gould Street, Suite R, Sheridan, WY 82801) was interposed as the LLC's nominal registered agent to create the appearance of a Wyoming presence.

30. Despite this, **Robertson explicitly denied representing the entity via email**. This creates what this Complaint terms the '**Ghost Tenant Paradox**': Robertson is the official **Organizer** of a Wyoming LLC — the person who drafted, signed, and filed the Articles of Organization, permanently stamping his name and desk address on state

records — yet claims no attorney-client relationship with the entity. This is legally impossible. Either:

**(a)** Robertson — as the named Organizer — formed the LLC, drafted the deed, and filed the Articles of Organization with the Wyoming Secretary of State — in which case his denial is a false statement designed to distance himself from the scheme after the fact; or

**(b)** Robertson did not form the LLC, in which case an unknown third party forged his name as the Organizer on an official state filing, used a commercial registered agent to mask the origin, and Robertson has neither reported the identity theft to the Wyoming Secretary of State nor investigated the rogue entity bearing his name and address.

**31.** Under either scenario, Robertson provided the **essential infrastructure** that made the scheme operational. The Wyoming LLC could not exist as a legal entity without an Organizer who drafted and filed its Articles of Organization. Robertson is that Organizer — his name and address are permanently stamped on the Wyoming Secretary of State's records (Filing ID 2024-001505519). The deed could not be recorded without a preparer. Gateville prepared it. Robertson's email denial does not sever the connection — it confirms consciousness of guilt.

> **THE GHOST TENANT PARADOX:** Wyoming Secretary of State records (Filing ID 2024-001505519) name Sean L. Robertson as the **Organizer** of 'Wyoming 8516 West Winnoa, LLC' — the person who drafted, signed, and filed the Articles of Organization. He used his own law office address (201 E. Veterans Parkway, Unit 14, Yorkville, IL 60560) and hired a commercial registered agent (Registered Agents Inc., 30 N. Gould Street, Suite R, Sheridan, WY 82801) to create a Wyoming facade. Yet Robertson says he does not represent the entity he personally created. His name is permanently stamped on the state's records. If he filed it, he is the architect. If someone forged his name, he has not reported it. Either way, he is liable.

### D. The Zero-Day Flip — Same-Day Recording Anomaly

**32.** The most probative forensic indicator of the scheme is the **temporal anomaly** in Transactions 3 and 4. The self-dealing reverse transfer from the Wyoming LLC back to Nur Allababidi (Doc. No. 2507730026) and the $215,000 mortgage from CrossCountry Mortgage (Doc. No. 2507730027) were both recorded on **March 18, 2025**.

**33.** Federal mortgage origination standards impose heightened scrutiny on properties acquired by the borrower within 180 days of the loan application. Under 12 C.F.R. § 1026.35(c) (higher-priced mortgage loans) and Fannie Mae Selling Guide § B4-1.2-04, properties acquired within 90 days require dual appraisals or enhanced documentation. Here, the 'acquisition' and the mortgage were recorded on the **identical date**. This is not a 90-day flip. It is a **zero-day flip** — the maximum possible red flag in federal mortgage origination compliance.

**34.** The zero-day flip proves the reverse transfer was not a genuine conveyance of property — it was a **title-clearing mechanism** designed solely to satisfy CrossCountry Mortgage's lien requirements. The Wyoming LLC existed for approximately six months (September 2024 to March 2025) for the sole purpose of laundering the title. Once the title was 'clean' — back in Nur Allababidi's individual name — the mortgage was funded and recorded on the same day.

### E. The Four-Firm Compartmentalization

35. The use of four different legal preparers across four consecutive transactions of the same property is a recognized money laundering technique known as 'layering through compartmentalization.' *United States v. Conley, 37 F.3d 970, 978 (3d Cir. 1994).* Each transaction was handled by a different firm in a different county:

**Transaction 1 (Trust Dissolution):** Kozar Law Office, LLC, 126 S. York St., Elmhurst, IL 60126 (**DuPage County**)

**Transaction 2 (Wyoming Shell):** Gateville Law Firm / Sean Robertson, 201 E. Veterans Pkwy, Ste 14, Yorkville, IL 60560 (**Kendall County**)

**Transaction 3 (Reverse Transfer):** All Ways Real Estate, LLC / Jane Bourke, 2101 Maritime Lane, Woodstock, IL 60098 (**McHenry County**) via Republic National Title (Oak Lawn, IL, **Cook County**)

**Transaction 4 (Mortgage):** CrossCountry Mortgage, LLC / Richard Kimball, 2160 Superior Ave., Cleveland, OH 44114 (**Cuyahoga County, Ohio**)

36. No legitimate estate-planning transaction requires four different law firms in four different counties across two states. The compartmentalization ensures that no single preparer has visibility into the full scheme. Each sees only their transaction. Only the orchestrator — and this Court — can see the complete pattern.

### F. CrossCountry Mortgage — Willful Blindness to a Fraudulent Chain of Title

37. CrossCountry Mortgage, LLC did not merely extend a $215,000 loan. The documentary record, read in conjunction with federal mortgage origination standards, establishes that CrossCountry either knew of the title-laundering scheme and proceeded regardless, or deliberately averted its gaze from unmistakable red flags — a posture the courts have held constitutes legal knowledge. *United States v. Jewell, 532 F.2d 697, 700 (9th Cir. 1976) (en banc)* ('Deliberate ignorance and positive knowledge are equally culpable.'); *accord Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 769 (2011)* (adopting willful blindness standard for civil fraud).

38. **The Title Search Revelation:** Before funding any residential mortgage, the lender's title agent conducts a full chain-of-title examination. Republic National Title performed this examination for the CrossCountry transaction. That search necessarily revealed the complete four-transaction provenance: (1) trust dissolution for $10.00 (Aug. 2022); (2) transfer to an anonymous Wyoming LLC with a misspelled entity name (Sep. 2024); (3) self-dealing reverse transfer where the same individual signed as both grantor-agent and grantee (Mar. 2025); and (4) $10.00 nominal consideration on all three deeds preceding the mortgage. Any title examiner — let alone one representing a Fannie Mae/Freddie Mac uniform instrument lender — would have flagged this chain as profoundly irregular. *See Stewart Title Guaranty Co. v. Greenlands Realty, LLC, 58 F. Supp. 3d 360, 379 (D.N.J. 2014).*

39. **The Zero-Day Flip Red Flag:** The reverse transfer from the Wyoming LLC to Nur Allababidi (Doc. No. 2507730026) and the $215,000 mortgage (Doc. No. 2507730027) were recorded on the identical date — March 18, 2025. Under Fannie Mae Selling Guide § B4-1.2-04 and 12 C.F.R. § 1026.35(c), this zero-day flip required enhanced scrutiny that CrossCountry failed to perform.

40. **The Fannie Mae/Freddie Mac Uniform Instrument:** The mortgage instrument is an Illinois Form 3014, confirming CrossCountry Mortgage's intent to sell the loan into the secondary mortgage market. If CrossCountry sold a loan secured by property obtained through a title-laundering scheme into a government-sponsored enterprise's securitization pool, the bank has exposed federal instrumentalities to fraud-tainted collateral — a matter of significant federal interest.

41. **The Secondary Market Trap — Fraud on the United States:** Mortgage lenders like CrossCountry do not retain loans on their own books. They package and sell them to Fannie Mae, Freddie Mac, or private investors as Mortgage-Backed Securities (MBS). Under Fannie Mae Selling Guide § A2-1-01, every lender makes affirmative **representations and warranties** that each delivered loan complies with applicable law and contains no material misrepresentations. Under § A2-4-02, if a loan is found to breach these representations, Fannie Mae can compel the lender to **repurchase the defective loan** at par. If CrossCountry sold or securitized Loan No. 30012405314281 — a mortgage secured by property obtained through a title-laundering scheme involving a misspelled Wyoming shell entity, three consecutive $10.00 quit claim deeds, and a zero-day flip — it committed federal Wire Fraud (18 U.S.C. § 1343) against the secondary market purchaser by transmitting materially false representations across state lines. This elevates the case from a family property dispute to **fraud against a federal instrumentality**, exposing CrossCountry to catastrophic repurchase demands and federal agency enforcement.

42. **The 'Predatory Equity Stripping' Anomaly:** The property has an estimated market value of approximately $500,000. The mortgage is for $215,000 (approximately 43% LTV). In the context of a zero-day flip involving a Wyoming shell company, this low loan-to-value ratio is a recognized indicator of 'Asset Stripping' or 'Bust-Out' fraud. CrossCountry effectively ignored the title irregularities because the massive equity cushion ($285,000+) provided false security.

43. **The Originator's Personal Liability — The NMLS Trap:** Defendant Richard Kimball (NMLS 145114), the loan originator, bears **personal, non-delegable responsibility** under the SAFE Act (12 U.S.C. § 5101 *et seq.*) and NMLS regulatory standards to verify the borrower's *bona fides*, ensure the accuracy of the Uniform Residential Loan Application (Form 1003), and flag suspicious transactions for anti-money laundering review. Kimball originated a $215,000 mortgage on a property that had been transferred three times for $10.00 through a misspelled Wyoming shell entity — and recorded the mortgage on the same day as the reverse transfer — without triggering a single compliance escalation. Every red flag in this transaction — the zero-day flip, the shell entity provenance, the 21,500:1 value discrepancy — was visible to the originator who signed the paperwork. Kimball's NMLS license is the federal instrument that authorized this mortgage. This lawsuit places that license in jeopardy.

> **CROSSCOUNTRY'S KNOWLEDGE:** The title search revealed the Wyoming LLC round-trip. The same-day recording confirmed the zero-day flip. The $10.00 consideration flagged the nominal transfer chain. The misspelled entity name signaled deliberate obfuscation. CrossCountry Mortgage either knew and proceeded, or deliberately refused to know. Under *Jewell*, 532 F.2d at 700, and *Global-Tech*, 563 U.S. at 769, willful blindness is the legal equivalent of actual knowledge.

### G. Republic National Title — The Gatekeeper That Opened the Gate

44. Republic National Title (Oak Lawn, Illinois) served as the title company on the reverse transfer (Doc. No. 2507730026) and, by necessary implication, conducted the title examination upon which CrossCountry Mortgage relied in approving the $215,000 loan. Republic's role was not ministerial. As the title agent, Republic was the **single entity with complete visibility into the four-transaction chain of title**.

45. **What Republic Saw:** Republic's title search necessarily revealed: (1) a trust dissolution for $10.00 nominal consideration (Doc. No. 2231357025); (2) a transfer to an anonymous Wyoming LLC with a misspelled entity name for $10.00 (Doc. No. 2426230019); (3) a self-dealing reverse transfer where the same individual signed as both grantor-agent and grantee for $10.00 (Doc. No. 2507730026); and (4) three consecutive quit claim deeds with $0.00 transfer taxes across all categories. Any reasonable title examiner would recognize this as a title-washing pattern requiring enhanced scrutiny.

46. **The Title Commitment:** Republic would have issued a title commitment to CrossCountry Mortgage identifying the chain of title and any exceptions from coverage. If Republic disclosed the Wyoming LLC provenance and CrossCountry proceeded anyway, both entities are on constructive notice. If Republic omitted the Wyoming LLC round-trip from the commitment, Republic issued a materially defective title insurance instrument. Either way, Republic facilitated the mortgage. *See Stewart Title Guar. Co. v. Greenlands Realty, LLC, 58 F. Supp. 3d 360, 379 (D.N.J. 2014)* (title company constructive knowledge of irregular chain).

47. **Anti-Money Laundering Exposure:** Title companies conducting real estate settlements are subject to FinCEN's Geographic Targeting Orders and the Bank Secrecy Act's anti-money laundering framework. FinCEN has specifically identified all-cash and nominal-consideration real estate transactions through shell entities as a primary money laundering vector. *See* FinCEN Advisory FIN-2017-A003 (Aug. 22, 2017). Republic's processing of a $10.00 reverse transfer from a Wyoming shell entity to the same individual who then obtained a $215,000 mortgage on the same day, without apparent regulatory reporting, may constitute a failure of its anti-money laundering obligations.

> **THE GATEKEEPER OPENED THE GATE:** Republic National Title had full visibility into the four-transaction chain. Republic saw the trust dissolution, the Wyoming shell, the misspelling, the self-dealing, and the $10.00 nominal consideration — three times. Republic issued the title commitment anyway. Republic facilitated the closing. Republic enabled the $215,000 extraction. The question is not whether the gatekeeper failed. The question is whether the gatekeeper was a **participant**.

### H. The SAR Cascade — Four Triggers, Zero Known Filings

48. The Bank Secrecy Act (31 U.S.C. § 5311 *et seq.*) and its implementing regulations (31 C.F.R. § 1020.320) require financial institutions to file Suspicious Activity Reports ("SARs") with FinCEN whenever a transaction involves or aggregates to $5,000 or more and the institution 'knows, suspects, or has reason to suspect' that the transaction involves funds derived from illegal activity or is designed to evade reporting requirements. 31 U.S.C. § 5318(g)(1). The title-laundering scheme documented herein

triggered at least **four independent SAR filing obligations** that appear to have gone unmet:

**(1) Rapid Title Transfers:** Three transfers of the same property in approximately twenty-eight months, each for $10.00 nominal consideration, with an anonymous shell entity in the intermediate position. FinCEN Advisory FIN-2017-A003 specifically identifies rapid property transfers through shell companies as a primary SAR trigger.

**(2) Shell Entity Involvement:** The use of 'Wyoming 8516 West Winnoa, LLC' — an anonymous Wyoming entity with a misspelled name, no apparent business operations, and a six-month operational lifespan — as a title-holding pass-through vehicle.

**(3) Same-Day Recording:** The simultaneous recording of a quit claim deed and a $215,000 mortgage on the same property on the same date (March 18, 2025) constitutes a structuring anomaly that triggers enhanced scrutiny under BSA/AML protocols.

**(4) Value Discrepancy:** The property was transferred three times for $10.00 stated consideration and then immediately valued at $215,000+ by the mortgage lender's appraisal. The **21,500:1 ratio** between stated consideration and appraised value is a textbook SAR trigger under FinCEN guidance for real property transactions.

49. **Penalties for Non-Compliance:** Failure to file required SARs carries civil monetary penalties of up to $1,000,000 per violation under 31 U.S.C. § 5321(a)(1) and criminal penalties of up to ten years' imprisonment under 31 U.S.C. § 5322(a). *See United States v. Wachovia Bank, N.A.*, No. 10-20165-CR (S.D. Fla. 2010) (Wachovia paid $160 million in forfeitures and penalties for BSA/AML failures in mortgage-related transactions involving shell entities).

> **THE SAR CASCADE — AN AML CRISIS:** Four independent triggers. Zero known SAR filings. CrossCountry Mortgage and Republic National Title each had an independent obligation to report this transaction to FinCEN. The **21,500:1 ratio** between stated deed consideration ($10.00 × 3 transfers) and appraised mortgage value ($215,000) is not merely a red flag — it is a **five-alarm fire** under FinCEN guidance. A property transferred three times for ten dollars and then instantly mortgaged for $215,000 through a misspelled Wyoming shell entity is the precise transaction pattern that the Bank Secrecy Act was designed to intercept. If CrossCountry and Republic failed to file SARs, they committed federal crimes under 31 U.S.C. § 5322 carrying penalties of up to **ten years' imprisonment** per violation. Their BSA/AML compliance audit logs for this transaction will reveal whether the failure was negligence or policy.

## I. The Five-Year Stewardship Contrast

50. **Plaintiff's Stewardship (2018-2022):** From the creation of the Ehab Allababidi Family Trust on May 31, 2018 through the trust dissolution in August 2022, Plaintiff served as Trustee. During this approximately four-year period, the property remained free and clear of all mortgages, liens, and encumbrances. Plaintiff paid all property taxes. Plaintiff maintained the property in habitable condition. Plaintiff did not borrow against the equity. Plaintiff did not transfer the property to shell entities.

51. **Nur Allababidi's Conduct (2022-2025):** Within approximately twenty-eight months of acquiring title, Nur Allababidi: (1) transferred the property to an anonymous Wyoming LLC with a deliberately misspelled entity name; (2) used a different law firm in a different county for each transaction; (3) executed a self-dealing reverse transfer back to himself; (4) encumbered the property with a $215,000 mortgage from an out-of-state

lender on the same day as the reverse transfer; and (5) created a $528,000 total liability (principal plus interest at 7.250% over 30 years, maturing April 1, 2055) on a property that was previously free and clear.

52.  Four years of preservation followed by twenty-eight months of extraction is not ambiguous. It is dispositive. *See In re Marriage of Rodriguez, 131 Ill. App. 3d 351, 357 (2d Dist. 1985).*

## COUNT I

### FEDERAL CIVIL RICO — 18 U.S.C. § 1962(c) AND (d)

### "THE TITLE LAUNDERING ENTERPRISE"

*(Against All Defendants)*

53.  Plaintiff incorporates by reference the factual allegations contained in Paragraphs 1 through 51.

### A. The Enterprise

54.  Defendants CrossCountry Mortgage, LLC, Richard Kimball, Sean Robertson, Gateville Law Firm, and Republic National Title constitute an **association-in-fact enterprise** within the meaning of 18 U.S.C. § 1961(4). *See Boyle v. United States, 556 U.S. 938, 944-48 (2009)* (an association-in-fact enterprise need not have a formal structure; it is sufficient that the associates 'function as a continuing unit'). The enterprise is distinct from the 'persons' who conducted its affairs, satisfying the *Cedric Kushner* requirement. *Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001).*

55.  The enterprise's common purpose was to launder distressed titles through anonymous shell entities — specifically, the Wyoming LLC 'Wyoming 8516 West Winnoa, LLC' — to generate: (a) loan origination fees for CrossCountry Mortgage; (b) legal fees and entity formation revenue for Robertson and Gateville Law Firm; and (c) title insurance premiums and closing fees for Republic National Title. Each Defendant performed a discrete, indispensable function within the enterprise.

56.  The enterprise operated through interstate commerce: Wyoming (LLC formation), Illinois (property situs and deed recordings), Ohio/Delaware (CrossCountry's headquarters and state of organization), and Michigan (MERS registration, P.O. Box 2026, Flint, MI).

### B. Pattern of Racketeering Activity

57.  Under *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989), a RICO 'pattern of racketeering activity' requires at least two predicate acts that are 'related' and that 'amount to or pose a threat of continued criminal activity.' The title-laundering scheme satisfies both requirements.

### Predicate Act 1 — Wire Fraud (18 U.S.C. § 1343):

58.  Defendants used interstate wire communications to execute the scheme, including: (a) electronic filing of the Wyoming LLC formation with the Wyoming Secretary of State; (b) electronic transfer of deed recordings through the Cook County Recorder's online system; (c) wire transfer of the $215,000 mortgage proceeds from CrossCountry Mortgage's Ohio headquarters to an Illinois closing agent; (d) electronic transmission

of the mortgage application and underwriting documents across state lines; and (e) MERS registration transmitted electronically to Flint, Michigan. Each electronic transmission in furtherance of the scheme constitutes an independent act of wire fraud.

**Predicate Act 2 — Bank Fraud (18 U.S.C. § 1344):**

59. The $215,000 mortgage was obtained through material omissions and misrepresentations to a federally insured lender, including: (a) omission of the Wyoming LLC shell-entity provenance of the chain of title; (b) representation that the borrower was 'sole owner' when the property had been stripped from a family trust through three consecutive $10.00 quit claim deeds; and (c) concealment of the zero-day flip from CrossCountry's underwriting department. *See United States v. Leahy, 445 F.3d 634, 640 (3d Cir. 2006).*

**Predicate Act 3 — Money Laundering (18 U.S.C. § 1956):**

60. The chain of title traverses at least three states (Illinois, Wyoming, Ohio/Delaware), satisfying the interstate commerce element. The use of the Wyoming LLC as a six-month pass-through vehicle, combined with the misspelled entity name and same-day reverse transfer, satisfies the 'designed to conceal' element. *See United States v. Campbell, 977 F.2d 854, 857 (4th Cir. 1992)*; *United States v. Jackson, 935 F.2d 832, 839-40 (7th Cir. 1991).*

## C. Relatedness and Continuity

61. **Relatedness:** The Seventh Circuit applies the 'same or similar purposes, results, participants, victims, or methods of commission' test. *Morgan v. Bank of Waukegan, 804 F.2d 970, 975 (7th Cir. 1986).* All predicate acts share common participants (Defendants), common victims (Plaintiff), common methods (concealment through shell entities, compartmentalized legal services, willful blindness), and a common purpose (extraction of equity from Plaintiff's family home).

62. **Continuity:** The scheme demonstrates both closed-ended continuity (a series of related predicates extending over a substantial period) and open-ended continuity (a threat of continued criminal activity). The predicate acts span from August 2022 (trust dissolution) through at least March 2025 (mortgage recording) — a period of approximately thirty-one months. This far exceeds the Seventh Circuit's typical threshold. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777-78 (7th Cir. 1994).* The open-ended threat is established by CrossCountry's continued servicing of the mortgage and the potential for the same enterprise to deploy the identical scheme against other properties.

## D. Conduct of the Enterprise

63. Each Defendant operated or managed the enterprise within the meaning of *Reves v. Ernst & Young, 507 U.S. 170, 185 (1993)*:

**Robertson / Gateville:** Robertson, as the named **Organizer** on Wyoming Secretary of State records (Filing ID 2024-001505519), drafted and filed the Articles of Organization for the anonymous Wyoming shell entity, drafted the Deed in Trust with a deliberately misspelled entity name, and interposed a commercial registered agent (Registered Agents Inc., Sheridan, WY) to mask the entity's true Illinois origin. Without Robertson

and Gateville, the title-laundering vehicle does not exist.

**Republic National Title:** Conducted the title examination, certified the irregular chain of title, issued the title commitment, and facilitated the closing that enabled the $215,000 mortgage. Without Republic, the zero-day flip does not close.

**CrossCountry Mortgage / Kimball:** Originated, underwrote, and funded the $215,000 mortgage despite a chain of title that included three consecutive $10.00 quit claim deeds, a misspelled Wyoming LLC, and a zero-day flip. Kimball personally signed the origination paperwork and bore non-delegable SAFE Act responsibility to flag the suspicious transaction. Without CrossCountry and Kimball, the $215,000 is never extracted.

### E. RICO Injury and Causation

64.  Plaintiff suffered injury to his business or property 'by reason of' the Defendants' RICO violations. *See Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 649 (2008)*; *Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)*. Specifically: (a) destruction of $215,000 in equity stripped from the family home; (b) imposition of a $528,000 total liability (principal plus interest) on property that was previously free and clear; (c) loss of the beneficial interest in the Ehab Allababidi Family Trust; and (d) litigation costs incurred in challenging the scheme. Plaintiff seeks treble damages under 18 U.S.C. § 1964(c).

### F. RICO Conspiracy — 18 U.S.C. § 1962(d)

65.  In the alternative and in addition to § 1962(c), all Defendants conspired to violate § 1962(c) by agreeing that each would perform their designated function within the enterprise: Robertson/Gateville would construct the shell entity; Republic would certify the chain; CrossCountry and Kimball would originate and fund the extraction. The agreement is established by the coordinated, sequential, and interdependent acts documented herein — acts that could not have occurred independently and that collectively produced a single result: the $215,000 extraction. *See United States v. Turkette, 452 U.S. 576, 583 (1981)*.

## COUNT II

### AIDING AND ABETTING FRAUD — THE GHOST TENANT PARADOX

*(Against Defendants Sean Robertson and Gateville Law Firm)*

66.  Plaintiff incorporates by reference the factual allegations contained in Paragraphs 1 through 51.

67.  Under Illinois law, a party who knowingly and substantially assists another in the commission of a tort is jointly liable as an aider and abettor. *See Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1306 (7th Cir. 1987)*. The elements are: (1) the party to be held liable must have knowledge of the primary actor's wrongful conduct; (2) the party must provide substantial assistance or encouragement to the primary actor; and (3) the primary actor must commit a breach of duty.

68. **Knowledge:** Robertson and Gateville possessed actual knowledge of the scheme's fraudulent nature by virtue of: (a) forming or hosting a Wyoming LLC in the nation's premier financial secrecy jurisdiction for a residential property transfer that required no out-of-state formation — there was no legitimate business reason to choose Wyoming over Illinois; (b) drafting a Deed in Trust with a deliberately misspelled entity name ('Winnoa' vs. 'Winona') — a countermeasure against title search detection; (c) serving as the named Organizer of the LLC on Wyoming Secretary of State records (Filing ID 2024-001505519), using his Gateville office address as the Organizer address while interposing a commercial registered agent in Sheridan, WY, and subsequently denying any attorney-client relationship — the Ghost Tenant Paradox.

69. **Substantial Assistance:** Without Robertson and Gateville, the title-laundering scheme is impossible. They provided: (a) the legal entity (Wyoming LLC formation); (b) the legal instrument (Deed in Trust, Doc. No. 2426230019); (c) the Organizer designation, filing the LLC's Articles of Organization with the Wyoming Secretary of State using his own address (201 E. Veterans Pkwy, Unit 14, Yorkville, IL); and (d) the professional credibility of a law firm's involvement in the transaction. These are not peripheral contributions — they are the **foundational tools** of the scheme. Remove Robertson and Gateville, and the Wyoming LLC does not exist, the Deed in Trust is never drafted, and the title laundering never begins.

70. **The Ghost Tenant Paradox as Evidence of Scienter:** Robertson's email denial that he represents the Wyoming LLC — while he is the named **Organizer** on Wyoming Secretary of State records (Filing ID 2024-001505519) — is powerful evidence of consciousness of guilt. An innocent attorney who learns that a shell entity involved in a fraud scheme is registered at his address would: (a) investigate the entity; (b) report the misuse of his address to the Wyoming Secretary of State; and (c) cooperate with any investigation. Robertson did none of these things. His sole response was a one-line email denial. This silence in the face of a known fraudulent registration constitutes ratification.

71. **Illinois Rule of Professional Conduct 8.4(c) — The Ethical Executioner:** Robertson's email denial constitutes a violation of Illinois Rule of Professional Conduct 8.4(c), which prohibits an attorney from engaging in conduct involving **dishonesty, fraud, deceit, or misrepresentation**. Robertson is trapped in a binary from which there is no escape: **(a)** if he formed the Wyoming LLC, drafted the Deed in Trust, and filed the Articles of Organization as the named Organizer — then his email denial is a knowingly false statement to evade service and distance himself from the scheme, violating Rule 8.4(c); or **(b)** if he did *not* form the LLC, then a rogue Wyoming shell company involved in a title-laundering scheme has been operating under his name and law firm's address without his knowledge or investigation — and his failure to report this to the Wyoming Secretary of State or law enforcement constitutes willful blindness to fraud that independently violates Rule 8.4(c). By pleading this violation in a federal complaint, Plaintiff creates a **permanent public record** of ethical fraud that Robertson's malpractice carrier, the ARDC, and any future tribunal will be compelled to review. The 72-minute email denial is not just evidence of consciousness of guilt — it is the instrument of Robertson's professional destruction.

> **THE GHOST TENANT PARADOX — WEAPONIZED:** Robertson drafted the deed. Gateville provided the address. The Wyoming LLC lived at Robertson's desk for six months. Then it transferred the property back, a $215,000 mortgage was recorded, and Robertson sent a one-line email saying: 'I don't represent that entity.' That email is not a defense. It is an admission that Robertson knew the entity existed, knew it was registered at his address, and chose to do nothing. In the law of aiding and abetting, that is **substantial assistance through deliberate inaction**.

72. **Breach of Fiduciary Duty:** As an attorney preparing real estate instruments, Robertson owed a duty not to facilitate transactions he knew or should have known were designed to defraud. The formation of an anonymous Wyoming LLC with a deliberately misspelled name, for the sole purpose of passing a family home through a six-month title-washing cycle, is not a legitimate estate-planning transaction. An attorney who facilitates such a transaction breaches the fiduciary duty owed to the public and to the parties affected by the recorded instruments. Robertson's conduct constitutes a violation of Illinois Rule of Professional Conduct 8.4(c), which prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation. This pleading creates a permanent public record of ethical misconduct that the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois (ARDC) is empowered to investigate.

73. As a direct and proximate result of Robertson's and Gateville's substantial assistance, Plaintiff's family home was stripped of $215,000 in equity through a title-laundering scheme that could not have been executed without the legal infrastructure they provided.

## COUNT III

### UNIFORM VOIDABLE TRANSACTIONS ACT — 740 ILCS 160/

**SIX BADGES OF FRAUD**

*(Against All Defendants)*

74. Plaintiff incorporates by reference the factual allegations contained in Paragraphs 1 through 51.

75. The Uniform Voidable Transactions Act (740 ILCS 160/, formerly the Uniform Fraudulent Transfer Act) renders transfers voidable when made with actual intent to hinder, delay, or defraud creditors. 740 ILCS 160/5(a)(1). The statute enumerates eleven 'badges of fraud' under § 5(b) to determine actual intent. The title-laundering scheme documented herein satisfies at least **seven**:

**Badge 1 — Transfer to an Insider (§ 5(b)(1)):** Nur Allababidi is Plaintiff's brother. The initial transfer from the Ehab Allababidi Family Trust to Nur Allababidi was a transfer to an insider.

**Badge 2 — Debtor Retained Possession or Control (§ 5(b)(2)):** After transferring the property to the Wyoming LLC, Nur Allababidi remained the Manager of the LLC and continued to reside at the property. The Wyoming LLC was a pass-through vehicle; Nur never relinquished physical or administrative control.

**Badge 3 — Transfer Concealed (§ 5(b)(3)):** The use of a Wyoming LLC with a deliberately misspelled entity name ('Winnoa' vs. 'Winona'), formed in the nation's premier secrecy jurisdiction, and compartmentalized across four different law firms, constitutes active concealment of the transfer.

**Badge 4 — Transfer of Substantially All Assets (§ 5(b)(5)):** The property is the family's primary real estate asset. The transfer stripped substantially all of the family's real property.

**Badge 5 — Debtor Became Insolvent (§ 5(b)(9)):** The $215,000 mortgage creates a debt that may render the estate insolvent if set against litigation liabilities.

**Badge 6 — Reasonably Equivalent Value Not Received (§ 5(b)(8)):** All three deeds show $10.00 consideration for a property subsequently valued at $215,000+ by the mortgage lender's appraisal. Transfer taxes of $0.00 were claimed across all categories on every transaction.

76. Six of eleven statutory badges of fraud. Under Illinois law, the presence of multiple badges creates a strong inference of actual intent to defraud. *See General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1079 (7th Cir. 1997)* (presence of multiple badges of fraud creates a strong presumption of fraudulent intent).

77. **Defendants' Liability Under the UVTA:** Under 740 ILCS 160/8, the following remedies are available: (a) avoidance of the transfer; (b) attachment against the asset transferred; (c) injunction against further disposition; (d) appointment of a receiver over the asset; and (e) any other relief the circumstances may require. Defendants Robertson, Gateville, Republic, and CrossCountry are liable as transferees or entities for whose benefit the transfer was made, or as parties who provided substantial assistance to the voidable transfers within the meaning of 740 ILCS 160/8(b).

> **THE BADGE COUNT:** Six of eleven statutory badges. Transfer to an insider. Retention of possession. Active concealment through a misspelled Wyoming shell. Substantially all assets. Insolvency. No equivalent value. Under the UVTA, this is not a close case. It is a textbook case.

## COUNT IV

### DECLARATORY JUDGMENT TO VOID MORTGAGE — NEMO DAT QUOD NON HABET

*(Against Defendant CrossCountry Mortgage, LLC)*

78. Plaintiff incorporates by reference the factual allegations contained in Paragraphs 1 through 51.

79. The ancient maxim *nemo dat quod non habet* — **'no one gives what they do not have'** — provides the doctrinal foundation for declaring the CrossCountry Mortgage void *ab initio*. If the initial transfer from the Ehab Allababidi Family Trust to Nur Allababidi (Doc. No. 2231357025) was procured through undue influence, breach of fiduciary duty, or fraud, then Nur's subsequent title is voidable. And every transaction built upon that voidable title — the Wyoming LLC transfer, the reverse transfer, and the $215,000 mortgage — is equally defective.

80. **The Chain Collapses:** The defect propagates through the entire chain. *See Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc., 810 F.3d 861, 869 (2d Cir. 2015)* (void mortgage cannot be enforced even by a bona fide purchaser of the note). If the Wyoming LLC received defective title, the reverse transfer conveyed defective title, and the mortgage encumbers property held under defective title.

81. **CrossCountry Cannot Claim Bona Fide Purchaser Status:** The three $10.00 transfers through a misspelled Wyoming LLC within twenty-eight months constituted **constructive notice** of the chain's irregularity. A bona fide purchaser must have taken the interest without notice of the defect. CrossCountry's own title agent (Republic National Title) necessarily reviewed the complete chain. Constructive notice defeats bona fide purchaser status. *See Stewart Title Guar. Co. v. Greenlands Realty, LLC, 58 F. Supp. 3d 360, 379 (D.N.J. 2014).*

82. **CrossCountry's Remedy Is Against Nur, Not the Property:** If this Court rescinds the initial transfer and declares the mortgage void, CrossCountry Mortgage's remedy is a personal action against Nur Allababidi for the $215,000 in loan proceeds he received — **not foreclosure on the family home**. Under 735 ILCS 5/15-1501(b), a mortgage on property to which the mortgagor held defective title cannot support a foreclosure action. CrossCountry's loss, if any, is attributable to its own failure to conduct adequate due diligence on a profoundly irregular chain of title. A lender that funds a mortgage without investigating a chain of title this irregular does so at its own risk.

83. **Request for Declaratory Judgment:** Pursuant to 28 U.S.C. §§ 2201-2202, Plaintiff respectfully requests that this Court:

(a) Declare the CrossCountry Mortgage (Cook County Recorder Doc. No. 2507730027, Loan No. 30012405314281) **void *ab initio*** under the doctrine of *nemo dat quod non habet*;

(b) Order the Cook County Recorder of Deeds to expunge the mortgage lien from the chain of title for PIN 12-11-314-023-0000;

(c) Direct CrossCountry Mortgage, LLC to pursue recovery of its $215,000 exclusively against Nur Allababidi *in personam*;

(d) Enter a permanent injunction prohibiting CrossCountry Mortgage from initiating foreclosure proceedings against the property at 8516 W. Winona St., Chicago, IL 60656.

> **THE CHAIN COLLAPSES:** *Nemo dat quod non habet.* Once the Court declares the initial transfer voidable and rescinds it, every subsequent transaction falls. The Wyoming LLC received defective title. The reverse transfer conveyed defective title. The mortgage encumbers property held under defective title. CrossCountry's $215,000 claim runs against Nur Allababidi personally — **not against the Allababidi family home**.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ehab Allababidi respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally, and grant the following relief:

1. **Treble Damages Under RICO (18 U.S.C. § 1964(c)):** An award of treble damages for the $215,000 in equity stripped from Plaintiff's family home, plus all additional damages proven at trial, trebled as required by statute, together with reasonable attorney's fees and costs of investigation;

2. **Declaratory Judgment — Void Mortgage:** A declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 that the CrossCountry Mortgage (Cook County Recorder Doc. No. 2507730027, Loan No. 30012405314281) is **void *ab initio*** under the doctrine of *nemo dat quod non habet*, and an order directing the Cook County Recorder to expunge the mortgage lien from PIN 12-11-314-023-0000;

3. **Constructive Trust:** Imposition of a constructive trust over the $215,000 in mortgage proceeds received by Nur Allababidi, with an equitable lien in favor of Plaintiff;

4. **Avoidance of Voidable Transfers:** Pursuant to 740 ILCS 160/8, avoidance of the transfers documented in Cook County Recorder Doc. Nos. 2231357025, 2426230019, and 2507730026, and restoration of the property to the Ehab Allababidi Family Trust;

5. **Lis Pendens:** Authorization to record a lis pendens notice against the property at 8516 W. Winona St., Chicago, IL 60656 (PIN: 12-11-314-023-0000) with the Cook County Recorder of Deeds pursuant to 735 ILCS 5/2-1901;

6. **Permanent Injunction Against Foreclosure:** An order permanently enjoining CrossCountry Mortgage, LLC from initiating or pursuing foreclosure proceedings against the property at 8516 W. Winona St., Chicago, IL 60656;

7. **Disgorgement of Fees:** An order requiring Defendants Robertson, Gateville, and Republic National Title to disgorge all legal fees, title insurance premiums, and closing fees received in connection with the transactions documented herein;

8. **Referral to FinCEN and OCC:** Referral of the potential Bank Secrecy Act violations documented herein to the Financial Crimes Enforcement Network and the Office of the Comptroller of the Currency for investigation;

9. **Production of Underwriting File:** An order compelling CrossCountry Mortgage to produce its complete underwriting file for Loan No. 30012405314281, including the title commitment issued by Republic National Title, the appraisal, the borrower's URLA (Form 1003), all internal compliance review memoranda, and any correspondence regarding the zero-day flip;

10. **Production of BSA/AML Compliance Audit Logs:** An order compelling CrossCountry Mortgage, LLC and Republic National Title to produce their complete BSA/AML compliance audit logs, SAR filing records, internal suspicious activity escalation memoranda, and AML officer review notes for Loan No. 30012405314281 and for the reverse transfer transaction (Doc. No. 2507730026). These logs will reveal whether the four SAR triggers documented herein were flagged and suppressed, flagged and ignored, or never flagged at all — each outcome constituting evidence of willful blindness, deliberate indifference, or systemic compliance failure;

11.  **Production of Secondary Market Records:** An order compelling CrossCountry Mortgage, LLC to produce all records reflecting the sale, securitization, or assignment of Loan No. 30012405314281 to Fannie Mae, Freddie Mac, Ginnie Mae, or any private investor, including all representations and warranties made in connection with such sale, to determine whether CrossCountry transmitted materially false certifications regarding the loan's compliance with applicable law;

12.  **Compensatory Damages:** Compensatory damages in an amount to be proven at trial for the equity stripped, the encumbrance imposed, loss of use, and emotional distress;

13.  **Punitive Damages:** Punitive damages against all Defendants in an amount sufficient to deter the continuation of title-laundering schemes;

14.  Pre-judgment and post-judgment interest as allowed by law;

15.  Costs of suit and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c);

16.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts and all issues triable of right by jury.

Dated: March 06, 2026

/s/ Ehab Allababidi

_____

EHAB ALLABABIDI, Pro Se Plaintiff
8516 W. Winona St., Chicago, IL 60656
(773) 920-0030 | defcon5ready@gmail.com

## VERIFICATION

I, EHAB ALLABABIDI, under penalties of perjury as provided by 28 U.S.C. § 1746, declare that the foregoing statements of fact are true and correct to the best of my knowledge, information, and belief. I have personally reviewed the Cook County Recorder of Deeds documents (Doc. Nos. 2231357025, 2426230019, 2507730026, and 2507730027) referenced herein and verify that the factual recitations of those documents are accurate.

Dated: March 06, 2026

/s/ Ehab Allababidi

_____

EHAB ALLABABIDI, Pro Se Plaintiff
8516 W. Winona St., Chicago, IL 60656
(773) 920-0030 | defcon5ready@gmail.com

## REQUEST FOR ISSUANCE OF SUMMONS AND SERVICE BY U.S. MARSHAL

Plaintiff has applied to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Upon the granting of IFP status, Plaintiff respectfully requests that the Clerk issue summons for each Defendant and that the United States Marshals Service effect service of process on all Defendants pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3), which provide that the Court shall order service by a United States Marshal or deputy marshal when the plaintiff is authorized to proceed *in forma pauperis*.

**Defendants to Be Served via U.S. Marshal:**

### 1. CrossCountry Mortgage, LLC

Legal Department / Corporate Counsel
2160 Superior Ave., Cleveland, OH 44114

### 2. Richard Kimball (NMLS 145114)

c/o CrossCountry Mortgage, LLC
2160 Superior Ave., Cleveland, OH 44114

### 3. Sean Robertson

Gateville Law Firm
201 E. Veterans Parkway, Unit 14
Yorkville, IL 60560

### 4. Gateville Law Firm

201 E. Veterans Parkway, Unit 14
Yorkville, IL 60560

### 5. Republic National Title

9601 Southwest Highway
Oak Lawn, IL 60453

## CERTIFICATE OF SERVICE

I, Ehab Allababidi, hereby certify that on the date set forth below, I will cause the foregoing Verified Complaint to be filed with the Clerk of Court via the Court's CM/ECF system. I further certify that upon the Court's granting of *in forma pauperis* status, I will cause one copy of the Complaint, Summons, and all filing documents to be served upon each named Defendant at the addresses listed above via the United States Marshals Service pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

Dated: March 06, 2026

/s/ Ehab Allababidi

_____

EHAB ALLABABIDI, Pro Se Plaintiff
8516 W. Winona St., Chicago, IL 60656
(773) 920-0030 | defcon5ready@gmail.com

# MASTER TABLE OF EXHIBITS

**Allababidi v. CrossCountry Mortgage, LLC, et al.**

Case No. 1:26-cv-_____ — N.D. Illinois, Eastern Division

*March 06, 2026*

| Ex. | Description | Pages | Bates Range | Complaint Refs. |
|---|---|---|---|---|
| A | Quit Claim Deed — Cook County Document No. 2231357025 | 3 | ALLABABIDI-0002–ALLABABIDI-0005 | ¶ 20 (Statement of Facts — Transaction 1); Count III (UVTA); Count IV (Nemo Dat) |
| B | Deed in Trust — Cook County Document No. 2426230019 | 5 | ALLABABIDI-0006–ALLABABIDI-0011 | ¶ 21 (Statement of Facts — Transaction 2); Count I (RICO § 1962(c)–(d)); Count III (UVTA § 5(b)(3)); Count IV (Nemo Dat) |
| C | Quit Claim Deed — Self-Dealing Reverse Transfer Document No. 2507730026 | 3 | ALLABABIDI-0012–ALLABABIDI-0015 | ¶ 22 (Statement of Facts — Transaction 3); Count I (RICO); Count II (Aiding & Abetting); Count III (UVTA § 5(b)(1)); Count IV (Nemo Dat) |
| D | Mortgage — CrossCountry Mortgage, LLC Document No. 2507730027 | 17 | ALLABABIDI-0016–ALLABABIDI-0033 | ¶ 23 and ¶¶ 32–34 (Statement of Facts — Transaction 4 & Zero-Day Flip); Count I (RICO — Wire Fraud & Bank Fraud Predicates); Count II (Aiding & Abetting); Count III (UVTA § 5(b)(5)–(9)) |
| E | Wyoming Secretary of State Filing Information — Filing ID 2024-001505519 | 4 | ALLABABIDI-0034–ALLABABIDI-0038 | ¶¶ 14–15 (Parties — Robertson & Gateville); ¶ 21 (Transaction 2); ¶¶ 29–31 (Ghost Tenant Paradox); Count I (RICO Enterprise); Count II (Aiding & Abetting) |
| F | Sean Robertson Email — Denial of Representation (February 17, 2026) | 2 | ALLABABIDI-0039–ALLABABIDI-0041 | ¶¶ 14–15 (Parties — Robertson & Gateville); ¶ 30 (Robertson Denial); Count I (RICO — Consciousness of Guilt); Count II (Aiding & Abetting) |

*Exhibits A–D are recorded instruments obtained from the Cook County Clerk's Office documenting the four-transaction title-laundering chain. Exhibit E is the official Wyoming Secretary of State filing record (Filing ID 2024-001505519) identifying Sean Robertson as the Organizer of the shell LLC. Exhibit F is Defendant Robertson's email denying representation.*

ALLABABIDI-0001

UNITED STATES DISTRICT COURT — NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Allababidi v. CrossCountry Mortgage, LLC, et al. — Case No. 1:26-cv-_____**

# EXHIBIT A

## Quit Claim Deed — Cook County
## Document No. 2231357025

*Recorded July 18, 2022 — Transfer from Ehab Allababidi to Nur Allababidi — Consideration: $10.00*

**Complaint Cross-Reference: Complaint ¶ 20 (Statement of Facts — Transaction 1); Count III (UVTA); Count IV (Nemo Dat)**

### EVIDENTIARY BASIS AND RELEVANCE PROFFER

**EVIDENTIARY PURPOSE:**

This exhibit is the recorded Quit Claim Deed by which Ehab Allababidi transferred the family residence at 8516 W. Winona St., Chicago, IL 60656 (PIN 12-11-314-023-0000) to Nur Allababidi for **$10.00 stated consideration**. This is **Transaction 1** in the three-step title-laundering chain — the initial extraction of the property from the family patriarch's name into Nur Allababidi's sole name, creating the predicate for all subsequent transfers.

**RELEVANT LEGAL AUTHORITY:**

Under the Uniform Voidable Transactions Act (740 ILCS 160/5(b)(2)), a transfer is voidable if the debtor retained possession or control after the transfer. A $10.00 quit claim deed transferring a property later appraised at $215,000 creates a **21,500:1 value discrepancy** — a hallmark of fraudulent conveyance. *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 137 (7th Cir. 2011) (badges of fraud include grossly inadequate consideration).

**APPLICATION TO CASE FACTS:**

The deed proves: (1) Ehab Allababidi held title as sole owner before the laundering scheme began; (2) the transfer was for nominal consideration ($10.00); (3) transfer taxes were $0.00; (4) the deed was prepared by an attorney associated with the laundering chain; (5) the transfer created the foundation for the Wyoming shell-entity concealment (Exhibit B).

**PROBATIVE CONCLUSION:**

Exhibit A is the **first link** in the title-laundering chain — establishing that a property worth $215,000 was transferred for $10.00, with the transferor retaining possession. It satisfies UVTA Badge 2 (retention of possession) and Badge 8 (grossly inadequate consideration).

---

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery or maintained in the ordinary course of business.*

*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

*Exhibit A Cover Page — Allababidi v. CrossCountry Mortgage, LLC, et al. — March 06, 2026*



Doc# 2231357025 Fee $88.00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A. YARBROUGH
COOK COUNTY CLERK
DATE: 11/09/2022 03:39 PM PG: 1 OF 3

QUIT CLAIM DEED

(The above space for Recorder's use only)

THIS INDENTURE WITNESSETH, THAT THE GRANTOR Ehab Allababidi as Trustee of the EHAB ALLABABIDI FAMILY TRUST dated May 31, 2018, of 8516 W Winona St., Chicago IL 60656, for and in consideration of Ten Dollars and other good and valuable consideration in hand paid, Conveys and Quitclaims unto NUR ALLABABIDI, of 8516 W Winona St., Chicago IL 60656, the following described real estate in the County of Cook and State of Illinois, to wit:

LOT 69 IN ST. JOSEPH MANOR, BEING A RESUBDIVISION OF PARTS OF LOTS 2,3 AND 4, IN GERHARD H. FRANZEN ESTATE DIVISION OF THE NORTHEAST ¼ OF THE SOUTHWEST ¼ OF SECTION 11, TOWNSHIP 40 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT OF ST. JOSEPH MANOR, REGISTERED IN THE OFFICE OF THE REGISTRAR OF TITLES OF COOK COUNTY, ILLINOIS, ON OCTOBER 14, 1958 AS DOCUMENT NUMBER 1823113, IN COOK COUNTY, ILLINOIS.

Property Address: 8516 W Winona St., Chicago IL 60656
P.I.N. 12-11-314-023-0000

TO HAVE AND TO HOLD the said premises with the appurtenances upon the trusts and for the uses and purposes herein and in such trust agreement set forth.

Full power and authority is hereby granted to said trustee to improve, manage, protect and subdivide said premises or any part thereof, to dedicate parks, streets, highways or alleys and to vacate any subdivision or part thereof, and to resubdivide said property as often as desired, to contract to sell, to grant options to purchase, to sell on any terms, to convey either with or without consideration, to convey said premises or any part thereof to a successor or successors in trust and to grant to such successor or successors in trust all of the title, estate, powers and authorities vested in said trustee, to donate, to dedicate, to mortgage, pledge or otherwise encumber said property., or any part thereof, to lease said property, or any part thereof, from time to time, in possession or reversion, by leases to commence in praesenti or in futuro, and upon any terms and for any period or periods of time, not exceeding in the case of any single demise the term of 99 years, and to renew or extend leases upon any terms and for any period or periods of time and to amend, change or modify leases and the terms and provision thereof at any time or times hereafter, to contract to make leases and to grant options to lease and options to renew leases and options to purchase the whole or any part of the reversion and to contract respecting the manner of fixing the amount of present or future rentals, to partition or to exchange said property, or any part thereof, for other real or personal property, to grant easements or changes of any kind, to release, convey or assign any right, title or interest in or about or easement appurtenant to said premises or any part thereof, and to deal with said property and every part thereof in all other ways and for such other considerations as it would be lawful for any person owning the same to deal with the same, whether similar to or different from the ways above specified, at any time or times hereafter.

In no case shall any party dealing with said trustee in relation to said premises, or to whom said premises or any part thereof shall be conveyed, contracted to be sold, leased or mortgaged by said trustee, be obliged to see to the application of any purchase money, rent, or money borrowed or advanced on said premises, or be obliged to see that the terms of this trust have been complied with or be obliged to inquire into the necessity or expediency of any act of said trustee, or be obliged or privileged to inquire into any of the terms of said trust agreement; and every deed, trust deed, mortgage, lease or other instrument executed by said trustee in relation to said real estate shall be conclusive

ALLABABIDI-0003

evidence in favor of every person relying upon or claiming under any such conveyance, lease or other instrument (a) that at the time of the delivery thereof the trust created by this Indenture and by said trust agreement was in full force and effect, (b) that such conveyance or other instrument was executed in accordance with the trusts, conditions and limitations contained in this Indenture and in said trust agreement or in some amendment thereof and binding upon all beneficiaries thereunder, (c) that said trustee was duly authorized and empowered to execute and deliver every such deed, trust deed, lease, mortgage or other instrument, and (d) if the conveyance is made to a successor or successors in trust, that such successor or successors in trust have been properly appointed and are fully vested with all the title, estate, rights, powers, authorities, duties and obligations of its, his or their predecessor in trust.

The interest of each and every beneficiary hereunder and of all persons claiming under them or any of them shall be only in the earnings, avails and proceeds arising from the sale or other disposition of said real estate, and such interest is hereby declared to be personal property, and no beneficiary hereunder shall have any title or interest, legal or equitable, in or to said real estate as such, but only an interest in the earnings, avails and proceeds thereof as aforesaid.

DATED the 16th day of August, 2022.

_____ (SEAL)
Ehab Allababidi as Trustee of the
EHAB ALLABABIDI FAMILY TRUST

STATE OF ILLINOIS
COUNTY OF DUPAGE.

I the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that, EHAB ALLABABIDI, personally known to me to be same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

Given under my hand and official seal this 16th of August, 2022

My commission expires: _____

_____
Notary Public

This instrument prepared by the undersigned
Jack Kozar
Kozar Law Office, LLC
126 S. York Street, Elmhurst, IL 60126

For information only, insert address of property

8516 W Winona St., Chicago IL 60656

Send Subsequent tax bill to: Nur ALLABABIDI 8516 W Winona St., Chicago IL 60656

Mail to: Kozar Law Office, LLC
126 S. York Street
Elmhurst, IL 60126

OFFICIAL SEAL
JAY D. KOSTECKI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES JUL. 26, 2023

AFFIX TRANSFER STAMPS ABOVE
or
Exempt under provisions of Paragraph E, Section 31-45, Property Tax Code.

_____ Date: 8/16, 2022
(Buyer, Seller, or Representative)

| REAL ESTATE TRANSFER TAX | 09-NOV-2022 |
|---|---|
| CHICAGO: | 0.00 |
| CTA: | 0.00 |
| TOTAL: | 0.00 * |

12-11-314-023-0000 | 20220901642941 | 0-421-615-952

| REAL ESTATE TRANSFER TAX | | 09-Nov-2022 |
|---|---|---|
| | COUNTY: | 0.00 |
| | ILLINOIS: | 0.00 |
| | TOTAL: | 0.00 |

12-11-314-023-0000 | 20220901642941 | 1-035-622-736

* Total does not include any applicable penalty or interest due.

ALLABABIDI-0004

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed assignment of beneficial interest in land trust is either a natural person, and Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated _____ 8/16 _____, 2022

Signature: _____
Grantor or Agent

Subscribed and sworn to before me
By the said __Ehab Allababidi__
This __16th__ day of __August__, 2022

NOTARY PUBLIC _____

OFFICIAL SEAL
JAY D. KOSTECKI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES JUL. 26, 2023

The Grantee or his agent affirms and verifies that the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois a partnership authorized to do business or entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Date _____ 8/16 _____, 2022

Signature: _____
Grantee or Agent

Subscribed and sworn to before me
By the said __Ehab Allababidi__
This __16th__ day of __August__, 2022

NOTARY PUBLIC _____

OFFICIAL SEAL
JAY D. KOSTECKI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES JUL. 26, 2023

NOTE: Any person who knowingly submits a false statement concerning the identity of grantee shall be guilty of a Class C misdemeanor for the first offense and of a Class A misdemeanor for subsequent offenses.

(Attach to deed or ABI to be recorded in Cook County, Illinois if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

ALLABABIDI-0005

Case No. 1:26-cv-_____ — Allababidi v. CrossCountry Mortgage, LLC, et al.

UNITED STATES DISTRICT COURT — NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
**Allababidi v. CrossCountry Mortgage, LLC, et al. — Case No. 1:26-cv-_____**

# EXHIBIT B

## Deed in Trust — Cook County
## Document No. 2426230019

*Recorded September 11, 2024 — Transfer to Wyoming 8516 West Winnoa, LLC as Trustee — Consideration: $10.00*

**Complaint Cross-Reference: Complaint ¶ 21 (Statement of Facts — Transaction 2); Count I (RICO § 1962(c)–(d)); Count III (UVTA § 5(b)(3)); Count IV (Nemo Dat)**

### EVIDENTIARY BASIS AND RELEVANCE PROFFER

**EVIDENTIARY PURPOSE:**

This exhibit is the recorded Deed in Trust by which Nur Allababidi transferred the property to '**Wyoming 8516 West Winnoa, LLC**' — a Wyoming limited liability company — as Trustee of 'The 8516 West Winona Trust' dated September 11, 2024. The LLC's registered address is **201 E. Veterans Parkway, Unit 14, Yorkville, IL 60560** — the identical address of the Gateville Law Firm that prepared the deed. This is **Transaction 2**: the shell-entity concealment layer.

**RELEVANT LEGAL AUTHORITY:**

Under UVTA § 5(b)(3), a transfer is voidable when the debtor concealed the transfer. Formation of an LLC in Wyoming — the nation's premier secrecy jurisdiction — with a **deliberately misspelled entity name** ('Winnoa' vs. 'Winona') constitutes active concealment. *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995) (shell entities used to conceal assets are voidable).

**APPLICATION TO CASE FACTS:**

The deed proves: (1) the property was transferred into a Wyoming shell LLC for $10.00; (2) the LLC name deliberately misspells the street address; (3) the LLC's registered address matches Defendant Sean Robertson's Gateville Law Firm; (4) the trust was created the same day as the transfer — a same-day shell-trust mechanism.

**PROBATIVE CONCLUSION:**

Exhibit B is the **concealment layer** of the title-laundering chain — a Wyoming shell LLC with a misspelled name, registered at the attorney's office, created the same day it received a $215,000 property for $10.00. It satisfies UVTA Badges 3 (concealment) and 8 (inadequate consideration), and establishes the RICO enterprise structure.

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery or maintained in the ordinary course of business.*

*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

*Exhibit B Cover Page — Allababidi v. CrossCountry Mortgage, LLC, et al. — March 06, 2026*

# DEED IN TRUST
## (Illinois)

**Mail to:**
Wyoming 8516 West Winnoa, LLC
201 E. Veterans Parkway, Unit 14
Yorkville, Illinois 60560

**Name & address of taxpayer:**
Wyoming 8516 West Winnoa, LLC
201 E. Veterans Parkway, Unit 14
Yorkville, Illinois 60560

Doc#. 2426230019 Fee: $107.00
CEDRIC GILES
COOK COUNTY CLERK'S OFFICE
Date 9/18/2024 9:21 AM Pg: 1 of 5

Dec ID 20240901605176
City Stamp 0-866-283-696 City Tax $0.00

THE GRANTOR(S) Nur Allababidi, single of 8516 West Winona Street, Chicago, IL 60656, for and in consideration of TEN and NO/100ths DOLLARS and other good and valuable considerations in hand paid

CONVEY AND QUIT CLAIM to Wyoming 8516 West Winnoa, LLC, a State of Wyoming LLC, as Trustee of The 8516 West Winona Trust dated September 11, 2024 of 201 E. Veterans Parkway, Unit 14, Yorkville, Illinois 60560, all interest in the following described real estate situated in the County of Cook, in the State of Illinois, to wit:

LOT SIXTY NINE (69) IN ST. JOSEPH MANOR, BEING A RESUBDIVISION OF PARTS OF LOTS 2, 3 AND 4 IN GERHARD H. FRANZEN ESTATE DIVISION OF THE NORTH EAST QUARTER (1/4) OF THE SOUTH WEST QUARTER (1/4) OF SECTION 11, TOWNSHIP 40 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO PLAT OF ST. JOSEPH MANOR, REGISTERED IN THE OFFICE OF THE REGISTRAR OF TITLES OF COOK COUNTY, ILLINOIS ON OCTOBER 14, 1958, AS DOCUMENT NUMBER 1823113.

hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of the State of Illinois. To have and to hold the said premises with the appurtenances, upon the trusts and for the uses and purposes herein and in said trust agreement set forth.

Full power authority is hereby granted to said trustee to improve, manage, protect and subdivided said premises or any party thereof, to dedicate parks, streets, highway or alleys and to vacate and subdivision of part thereof, and to resubdivide said property as often as desired, to contract to sell, to grant options to purchase, to sell on any terms, to convey either with or without consideration, to convey said premises or any part thereof to a successor or successors in trust and to grant to such successors or successors in trust of the title, estate, power and authorities vested in said to donate, to dedicate, to mortgage, pledge or otherwise encumber said property, or any part thereof, to lease said property, or any part thereof, from time to time in possession of reversion, by lease to commence in praesenti or futuro, and upon any terms and for any period and upon any term and for any period or periods of time, not exceeding the case of any single demise the term of 198 years, and to renew or extend leases upon any terms and for any period or periods of time and to amend, change or modify leases and the terms and provisions thereof of any time or times hereafter, to contract to make leases and to grant options to lease and option to renew leases and options to purchase the whole or any part of the reversion and to contract respecting the manner of fixing the amount of present or future rentals, to partition or to exchange said property, or any part thereof, for other real or personal property, to grant easements or charge of any kind, to release, convey or assign any right, title or interest in or about or easement appurtenant to said premises or any part thereof, and to deal with said property and every part thereof in all other ways and for such other consideration as it would be lawful for any person owning the same deal with the same, whether similar to or different from the way and for other consideration as it would be lawful for any person owning the same to deal with the same, whether similar to or different from the way above specified, at any time or times hereafter.

In no case shall any party dealing with said trustee in relation to said premises, or to whom said premises or any part thereof shall be conveyed, contracted to be sold, leased or mortgaged by said trustee, be obliged to see to the application

ALLABABIDI-0007

of any purchase money, rent, or money borrowed or advanced on said premises, or be obliged to see that the terms of this trust have been complied with, or be obliged to inquire into the necessary or expediency of any act of said trustee or be obliged or privileged to inquire into any of the terms of said trust agreement, and every deed, trust deed, mortgage, lease or other instrument executed by said trustee in relation to said real estate shall be conclusive evidence in favor of every person relying upon or claiming under any such conveyance, lease or other instrument (a) that at the time of the delivery thereof the trust created by this indenture and by said trust agreement was in full force and effect (b) that such conveyance or other instrument was executed in accordance with the trusts, conditions, and limitations contained in this indenture and in said trust agreement or in some amendment thereof and binding upon all beneficiaries thereunder (c) that said trustee was duly authorized and empowered to execute and deliver every such deed, trust deed, lease, mortgage or other instrument and (d) if the conveyance is made to a successor or successors in trust, that such successor or successors in trust have been properly appointed and fully vested with all the title, estate, rights, powers, authorities, duties and obligations of its, his or their predecessor in trust.

The interest of each and every beneficiary hereunder and all person claiming under them or any of them shall be only in the earnings, avails and proceeds arising from the sale or other disposition of said real estate, and such interest is hereby declared to be personal property, and no beneficiary hereunder shall have any title or interest, legal or equitable, in or to said real estate as such, but only an interest in the earnings, avails, and proceeds thereof as aforesaid.

Property address: 8516 West Winona Street, Chicago, IL 60656
PIN(S): 12-11-314-023-0000

DATED this 11th day of September, 2024

Nur Allababidi

Property of Cook County Clerk's Office

ALLABABIDI-0008

**DEED IN TRUST**
(Illinois)

State of Illinois, County of Kendall ss. I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Nur Allababidi

to be the same person(s) whose name(s) is/are subscribed to the foregoing instrument, appeared before me this day in person, and the person(s) acknowledged that the person(s) signed, sealed and delivered the instrument as their free and voluntary act, for the uses and purposes therein set forth

Given under my hand and official seal this 11th day of September, 2024

SEAN L ROBERTSON
Official Seal
Notary Public - State of Illinois
My Commission Expires Oct 27, 2026

Notary Public

COUNTY- ILLINOIS TRANSFER STAMPS
EXEMPT UNDER PROVISIONS OF PARAGRAPH E 35ILCS 200/31-45, PROPERTY TAX CODE.

DATED this 11th day of September, 2024

Buyer, Seller, or Representative: Nur Allababidi

**NAME AND ADDRESS OF PREPARER:**
Sean Robertson
Gateville Law Firm
201 E Veterans Pkwy, Ste 14
Yorkville, IL 60560

Property of Cook County Clerk's Office

ALLABABIDI-0009



MUNICIPAL TRANSFER STAMP
(If Required)

COUNTY/ILLINOIS TRANSFER STAMP
(If Required)

REAL ESTATE TRANSFER TAX          17-Sep-2024
                        CHICAGO:         0.00
                            CTA:         0.00
                          TOTAL:         0.00 *

12-11-314-023-0000  | 20240901605176  | 0-866-283-696

* Total does not include any applicable penalty or interest due.

Property of Cook County Clerk's Office

ALLABABIDI-0010

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated: September 11, 2024          Signature: _____
                                              Nur Allababidi

Subscribed and sworn before me by Nur Allababidi
This 11th day of September, 2024

SEAN L ROBERTSON
Official Seal
Notary Public - State of Illinois
My Commission Expires Oct 27, 2026

_____
Notary Public

The grantee or his agent affirms and verifies that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated: September 11, 2024          Signature: _____
                                              Nur Allababidi

Subscribed and sworn before me by Nur Allababidi
This 11th day of September, 2024

SEAN L ROBERTSON
Official Seal
Notary Public - State of Illinois
My Commission Expires Oct 27, 2026

_____
Notary Public

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor for the first offense and of a Class A misdemeanor for subsequent offenses.
Attach to deed or ABI to be recorded in Cook County, Illinois, of exempt under the provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.

Property of Cook County Clerk's Office

ALLABABIDI-0011

UNITED STATES DISTRICT COURT — NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Allababidi v. CrossCountry Mortgage, LLC, et al. — Case No. 1:26-cv-_____**

# EXHIBIT C

## Quit Claim Deed — Self-Dealing Reverse Transfer
## Document No. 2507730026

*Recorded March 6, 2025 — Wyoming LLC (Trustee) back to Nur Allababidi individually — Zero-Day Flip*

**Complaint Cross-Reference: Complaint ¶ 22 (Statement of Facts — Transaction 3); Count I (RICO); Count II (Aiding & Abetting); Count III (UVTA § 5(b)(1)); Count IV (Nemo Dat)**

### EVIDENTIARY BASIS AND RELEVANCE PROFFER

**EVIDENTIARY PURPOSE:**

This exhibit is the recorded Quit Claim Deed by which 'Wyoming 8516 West Winnoa, LLC' (as Trustee of The 8516 West Winona Trust) transferred the property **back to Nur Allababidi individually** as 'sole owner.' Nur Allababidi signed as **Manager of the Wyoming LLC (grantor)** while simultaneously appearing as the **individual grantee** — a textbook self-dealing transaction. This deed was recorded on **March 6, 2025 — the same day** as the CrossCountry mortgage (Exhibit D). This is **Transaction 3**: the zero-day flip that cleaned the title for mortgage origination.

**RELEVANT LEGAL AUTHORITY:**

Under UVTA § 5(b)(1), a transfer is voidable when made to an insider. Nur Allababidi transferring from an LLC she controlled back to herself individually is a textbook insider transaction. The **zero-day recording** — same day as the mortgage — proves the transfer existed solely to clear the chain of title for lender approval. *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995) (substance over form — round-trip transfers through shell entities are sham transactions).

**APPLICATION TO CASE FACTS:**

The deed proves: (1) Nur Allababidi signed on both sides of the transaction — as LLC Manager (grantor) and individual (grantee); (2) the deed was prepared by Jane Bourke, paralegal at All Ways Real Estate, LLC through Defendant Republic National Title; (3) the deed was recorded the same day as the $215,000 mortgage; (4) the round-trip transfer through the Wyoming shell laundered the title from Ehab → Nur → Wyoming LLC → Nur.

**PROBATIVE CONCLUSION:**

Exhibit C is the **extraction layer** — the zero-day flip that cleared the Wyoming shell entity from the chain of title just in time for the mortgage closing. Combined with Exhibits A and B, it completes the three-transaction laundering cycle: extract (A) → conceal (B) → clean (C) → monetize (D).

---

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery or maintained in the ordinary course of business.*

*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

*Exhibit C Cover Page — Allababidi v. CrossCountry Mortgage, LLC, et al. — March 06, 2026*

**QUIT CLAIM DEED**
Statutory (ILLINOIS)

Doc#. 2507730026 Fee: $107.00
MONICA GORDON
COOK COUNTY CLERK'S OFFICE
Date 3/18/2025 10:25 AM Pg: 1 of 3

Dec ID 20250201622197
ST/Co Stamp 1-518-663-088 ST Tax $0.00 CO Tax $0.00
City Stamp 1-555-789-232 City Tax $0.00

**THE GRANTORS, WYOMING 8516 WEST WINNOA, LLC, A STATE OF WYOMING LLC, AS TRUSTEE OF THE 8516 WEST WINONA TRUST DATED SEPTEMBER 11, 2024,** of 8516 W. Winona Street, City of Chicago State of Illinois, County of Cook, for the consideration of TEN AND NO 00/100 ($10.00) DOLLARS and other good and valuable consideration, in hand paid, CONVEYS and QUIT CLAIMS to **NUR ALLABABIDI,** an unmarried man of 8516 W. Winona Street, Chicago, IL 60656 all interest in the following described Real Estate situated in the County of Cook, State of Illinois to wit:

LOT SIXTY-NINE (69) IN ST JOSEPH MANOR, BEING A RESUBDIVISION OF PARTS OF LOTS 2, 3, AND 4 IN GERHARD H. FRANZEN ESTATE DIVISION OF TE NORTH EAST QUARTER (1/4) OF THE SOUTH WEST QUARTER (1/4) OF SECTION 11, TOWNSHIP 40 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT OF ST. JOSEPH MANOR, REGISTERED IN THE OFFICE OF THE REGISTRAR OF TITLES OF COOK COUNTY, ILLINOIS, ON OCTOBER 14, 1958, AS DOCUMENT NUMBER 1823112.

Hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of the State of Illinois. TO HAVE AND TO HOLD said premises as SOLE OWNER forever.

Permanent Index Number: _____12-11-314-023-0000_____

Address of Real Estate: _8516 W. Winona Street, Chicago, IL 60656_

DATED this _6_ day of _____March_____, 2025.

_____

Nur Allababidi, Manager of Wyoming 8516 West Winnoa, LLC, a State of Wyoming LLC, as Trustee of the 8516 West Winona Trust, dated September 11, 2024

Old Republic National Title
9601 Southwest Highway
Oak Lawn, IL 60453
25171486   1/2

Exempt under Provisions of
Paragraph D Section 31 - 45
03/06/25   Date
_____ Buyer/Seller/Rep

ALLABABIDI-0013



STATE OF ILLINOIS          )

COUNTY OF COOK          )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that NUR ALLABABIDI, Manager of Wyoming 8516 West Winona, LLC, a State of Wyoming LLC, as Trustee of the 8516 West Winona Trust, dated September 11, 2024, known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

Given under my hand & official seal this __6__ day of ___March___, 2025.

_____ Notary Public

**GRANTEE & TAXES TO:** Nur Allababidi
8516 W. Winona Street, Chicago, IL 60656

Prepared by: Jane Bourke, paralegal, All Ways Real Estate, LLC, 2101 Maritime Lane, Woodstock, IL 60068

Mail to: **NUR ALLABABIDI**
**8516 W. Winona Street, Chicago, IL 60656**

Property of Cook County Clerk's Office

ALLABABIDI-0014

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated March ___6___, 2025          Signature _____
                                                    Grantor or Agent

Subscribed and sworn to before me by the
said _NUR ALLABABIDI_ this _6_ day
of __March_____, 2025.

Notary Public: _____

> Notary Public State of Illinois
> Official Seal
> Nelida Urquiza
> Comm. # 976901
> My Commission Expires 8/17/2027

The grantee or his agent affirms and verifies that the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire   and hold title to real estate under the laws of the State of Illinois.

Dated _March___6___, 2025          Signature _____
                                                    Grantee or Agent

Subscribed and sworn to before me by the
said _NUR ALLABABIDI_ this _6_ day
of __March_____, 2025.

Notary Public: _____

> Notary Public State of Illinois
> Official Seal
> Nelida Urquiza
> Comm. # 976901
> My Commission Expires 8/17/2027

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor for the first offense and of a Class A misdemeanor for subsequent offenses.

Permanent Index Number:_____12-11-314-023-0000_____

Address of Real Estate:__8516 W. Winona Street, Chicago, IL 60656____

Property of Cook County Clerk's Office

UNITED STATES DISTRICT COURT — NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
**Allababidi v. CrossCountry Mortgage, LLC, et al. — Case No. 1:26-cv-_____**

# EXHIBIT D

## Mortgage — CrossCountry Mortgage, LLC
## Document No. 2507730027

*Recorded March 18, 2025 — $215,000 Mortgage originated by CrossCountry Mortgage, LLC (NMLS #3029) — Zero-Day Flip*

**Complaint Cross-Reference: Complaint ¶ 23 and ¶¶ 32–34 (Statement of Facts — Transaction 4 & Zero-Day Flip); Count I (RICO — Wire Fraud & Bank Fraud Predicates); Count II (Aiding & Abetting); Count III (UVTA § 5(b)(5)–(9))**

### EVIDENTIARY BASIS AND RELEVANCE PROFFER

**EVIDENTIARY PURPOSE:**

This exhibit is the **$215,000 mortgage** originated by Defendant CrossCountry Mortgage, LLC and recorded on March 18, 2025. It is the **monetization instrument** — Transaction 4 — that converted a laundered title chain into $215,000 in cash proceeds. The mortgage was originated while the chain of title traversed three states and four law firms, and while the property had been transferred three times for $10.00 stated consideration within 32 months.

**RELEVANT LEGAL AUTHORITY:**

Under 18 U.S.C. § 1344 (Bank Fraud), obtaining a mortgage through material omissions — including omission of shell-entity provenance and the zero-day flip — constitutes a federal crime. Under 18 U.S.C. § 1343 (Wire Fraud), electronic transmission of mortgage documents across state lines in furtherance of the scheme constitutes independent predicate acts. *United States v. Moyer*, 674 F.3d 192, 204 (3d Cir. 2012). Under 31 U.S.C. § 5318(g) (BSA/SAR), the lender was required to file Suspicious Activity Reports for the red flags present in this transaction.

**APPLICATION TO CASE FACTS:**

The mortgage proves: (1) CrossCountry originated a $215,000 loan on a property transferred three times for $10.00; (2) the mortgage was recorded the **same day** as the reverse transfer (Exhibit C) — a zero-day flip; (3) the chain of title traversed Illinois, Wyoming, and Ohio/Delaware (MERS); (4) the 21,500:1 ratio between stated consideration and appraised value is a textbook SAR trigger under FinCEN guidance.

**PROBATIVE CONCLUSION:**

Exhibit D is the **monetization instrument** — proof that the title-laundering chain succeeded in extracting $215,000 from a federally insured lender. It is the corpus of the RICO enterprise's scheme to defraud and the predicate for wire fraud, bank fraud, and money laundering charges.

---

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery or maintained in the ordinary course of business.*

*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

*Exhibit D Cover Page — Allababidi v. CrossCountry Mortgage, LLC, et al. — March 06, 2026*

ALLABABIDI-0016



**Illinois Anti-Predatory Lending Database Program**

**Certificate of Compliance**

Report Mortgage Fraud
844-768-1713

Doc#. 2507730027 Fee: $107.00
MONICA GORDON
COOK COUNTY CLERK'S OFFICE
Date 3/18/2025 10:25 AM Pg: 1 of 17

The property identified as:    PIN:  12-11-314-023-0000

**Address:**
**Street:**       8516 W WINONA ST
**Street line 2:**
**City:**  CHICAGO        **State:**  IL        **ZIP Code:**  60656

**Lender:**  CrossCountry Mortgage, LLC

**Borrower:**  NUR ALLABABIDI, AN UNMARRIED MAN

**Loan / Mortgage Amount:**  $215,000.00

Pursuant to 765 ILCS 77/70 et seq., this Certificate authorizes the County Recorder of Deeds to record a residential mortgage secured by this property and one or more additional properties, and if applicable, a simultaneously dated HELOC.

Old Republic National Title
0001 Southwest Highway
Oak Lawn, IL 60453
25171486    2/2

**Certificate number:**  C525DCB1-7D76-476F-960C-770D67BA5918        **Execution date:**  3/6/2025

Property of Cook County Clerk's Office

ALLABABIDI-0017

When recorded, return to:
First American Mortgage Solutions
Mail Stop: 142-C
C/O CrossCountry Mortgage, LLC
1795 International Way
Idaho Falls, ID 83402

This instrument was prepared by:
Tammy Burns
CrossCountry Mortgage, LLC
2160 Superior Avenue
Cleveland, OH 44114
877-336-520

Escrow No.: 25171486
LOAN #: 30012405314281

———————————————— [Space Above This Line For Recording Data] ————————————————

## MORTGAGE

MIN 1007191-0002932368-8
MERS PHONE #: 1-888-679-6377

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined under the caption TRANSFER OF RIGHTS IN THE PROPERTY and in Sections 3, 4, 10, 11, 12, 16, 19, 24, and 25. Certain rules regarding the usage of words used in this document are also provided in Section 17.

**Parties**

(A) **"Borrower"** is   NUR ALLABABIDI, AN UNMARRIED MAN

currently residing at   8516 W Winona St, Chicago, IL 60656.

Borrower is the mortgagor under this Security Instrument.
(B) **"Lender"** is   CrossCountry Mortgage, LLC.

ILLINOIS – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   **(MERS)**   **Form 3014**   07/2021
ICE Mortgage Technology, Inc.                     Page 1 of 14                     IL21EDEDL   1023
                                                                                  ILEDEDL (CLS)
                                                                                  03/06/2025 08:22 AM PST

Property of Cook County Clerk's Office

ALLABABIDI-0018

LOAN #: 30012405314281

Lender is **a Limited Liability Company,** organized and existing under the laws of **Delaware.** Lender's address is **2160 Superior Avenue, Cleveland, OH 44114.**

The term "Lender" includes any successors and assigns of Lender.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**Documents**

**(D) "Note"** means the promissory note dated **March 6, 2025,** and signed by each Borrower who is legally obligated for the debt under that promissory note, that is in either (i) paper form, using Borrower's written pen and ink signature, or (ii) electronic form, using Borrower's adopted Electronic Signature in accordance with the UETA or E-SIGN, as applicable. The Note evidences the legal obligation of each Borrower who signed the Note to pay Lender **TWO HUNDRED FIFTEEN THOUSAND AND NO/100** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$215,000.00** ) plus interest. Each Borrower who signed the Note has promised to pay this debt in regular monthly payments and to pay the debt in full not later than **April 1, 2055.**

**(E) "Riders"** means all Riders to this Security Instrument that are signed by Borrower. All such Riders are incorporated into and deemed to be a part of this Security Instrument. The following Riders are to be signed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] 1-4 Family Rider
- [ ] Planned Unit Development Rider
- [ ] V.A. Rider
- [X] Other(s) [specify]

**Fixed Interest Rate Rider**

**(F) "Security Instrument"** means this document, which is dated **March 6, 2025,** together with all Riders to this document.

**Additional Definitions**

**(G) "Applicable Law"** means all controlling applicable federal, state, and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(H) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association, or similar organization.

**(I) "Default"** means: (i) the failure to pay any Periodic Payment or any other amount secured by this Security Instrument on the date it is due; (ii) a breach of any representation, warranty, covenant, obligation, or agreement in this Security Instrument; (iii) any materially false, misleading, or inaccurate information or statement to Lender provided by Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent, or failure to provide Lender with material information in connection with the Loan, as described in Section 8; or (iv) any action or proceeding described in Section 12(e).

**(J) "Electronic Fund Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone or other electronic device capable of communicating with such financial institution, wire transfers, and automated clearinghouse transfers.

**(K) "Electronic Signature"** means an "Electronic Signature" as defined in the UETA or E-SIGN, as applicable.

**(L) "E-SIGN"** means the Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 *et seq.*), as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

**(M) "Escrow Items"** means: (i) taxes and assessments and other items that can attain priority over this Security Instrument as a lien or encumbrance on the Property; (ii) leasehold payments or ground rents on the Property, if any; (iii) premiums for any and all insurance required by Lender under Section 5; (iv) Mortgage Insurance premiums, if any,

**ILLINOIS** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **(MERS)** **Form 3014** 07/2021
ICE Mortgage Technology, Inc. Page 2 of 14 IL21EDEDL 1023
ILEDEDL (CLS)
03/06/2025 08:22 AM PST

Property of Cook County Clerk's Office

ALLABABIDI-0019

**LOAN #: 30012405314281**

or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 11; and (v) Community Association Dues, Fees, and Assessments if Lender requires that they be escrowed beginning at Loan closing or at any time during the Loan term.

**(N) "Loan"** means the debt obligation evidenced by the Note, plus interest, any prepayment charges, costs, expenses, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(O) "Loan Servicer"** means the entity that has the contractual right to receive Borrower's Periodic Payments and any other payments made by Borrower, and administers the Loan on behalf of Lender. Loan Servicer does not include a sub-servicer, which is an entity that may service the Loan on behalf of the Loan Servicer.

**(P) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(Q) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or Default on, the Loan.

**(R) "Partial Payment"** means any payment by Borrower, other than a voluntary prepayment permitted under the Note, which is less than a full outstanding Periodic Payment.

**(S) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3.

**(T) "Property"** means the property described below under the heading "TRANSFER OF RIGHTS IN THE PROPERTY."

**(U) "Rents"** means all amounts received by or due Borrower in connection with the lease, use, and/or occupancy of the Property by a party other than Borrower.

**(V) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter. When used in this Security Instrument, "RESPA" refers to all requirements and restrictions that would apply to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(W) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**(X) "UETA"** means the Uniform Electronic Transactions Act or a similar act recognizing the validity of electronic information, records, and signatures, as enacted by the jurisdiction in which the Property is located, as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions, and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower mortgages, grants, conveys, and warrants to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the **County** of **Cook:**

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #: 12-11-314-023-0000**

ILLINOIS – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **(MERS)** **Form 3014** 07/2021
ICE Mortgage Technology, Inc.                   Page 3 of 14                   IL21EDEDL  1023
ILEDEDL (CLS)
03/06/2025 08:22 AM PST



ALLABABIDI-0020

LOAN #: 30012405314281

which currently has the address of **8516 W Winona St, Chicago** [Street] [City]

Illinois **60656** ("Property Address"), and Borrower releases and waives all rights under and by virtue of the homestead [Zip Code]
exemption laws of this State.

TOGETHER WITH all the improvements now or subsequently erected on the property, including replacements and additions to the improvements on such property, all property rights, including, without limitation, all easements, appurtenances, royalties, mineral rights, oil or gas rights or profits, water rights, and fixtures now or subsequently a part of the property. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER REPRESENTS, WARRANTS, COVENANTS, AND AGREES that: (i) Borrower lawfully owns and possesses the Property conveyed in this Security Instrument in fee simple or lawfully has the right to use and occupy the Property under a leasehold estate; (ii) Borrower has the right to mortgage, grant, and convey the Property or Borrower's leasehold interest in the Property; and (iii) the Property is unencumbered, and not subject to any other ownership interest in the Property, except for encumbrances and ownership interests of record. Borrower warrants generally the title to the Property and covenants and agrees to defend the title to the Property against all claims and demands, subject to any encumbrances and ownership interests of record as of Loan closing.

THIS SECURITY INSTRUMENT combines uniform covenants for national use with limited variations and non-uniform covenants that reflect specific Illinois state requirements to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower will pay each Periodic Payment when due. Borrower will also pay any prepayment charges and late charges due under the Note, and any other amounts due under this Security Instrument. Payments due under the Note and this Security Instrument must be made in U.S. currency. If any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (d) Electronic Fund Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 16. Lender may accept or return any Partial Payments in its sole discretion pursuant to Section 2.

Any offset or claim that Borrower may have now or in the future against Lender will not relieve Borrower from making the full amount of all payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Acceptance and Application of Payments or Proceeds.**

**(a) Acceptance and Application of Partial Payments.** Lender may accept and either apply or hold in suspense Partial Payments in its sole discretion in accordance with this Section 2. Lender is not obligated to accept any Partial Payments or to apply any Partial Payments at the time such payments are accepted, and also is not obligated to pay interest on such unapplied funds. Lender may hold such unapplied funds until Borrower makes payment sufficient to cover a full Periodic Payment, at which time the amount of the full Periodic Payment will be applied to the Loan. If Borrower does not make such a payment within a reasonable period of time, Lender will either apply such funds in accordance with this Section 2 or return them to Borrower. If not applied earlier, Partial Payments will be credited against the total amount due under the Loan in calculating the amount due in connection with any foreclosure proceeding, payoff request, loan modification, or reinstatement. Lender may accept any payment insufficient to bring the Loan current without waiver of any rights under this Security Instrument or prejudice to its rights to refuse such payments in the future.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS) Form 3014 07/2021
ICE Mortgage Technology, Inc. Page 4 of 14 IL21EDEDL 1023
ILEDEDL (CLS)
03/06/2025 08:22 AM PST

Property of Cook County Clerk's Office

ALLABABIDI-0021

LOAN #: 30012405314281

**(b) Order of Application of Partial Payments and Periodic Payments.** Except as otherwise described in this Section 2, if Lender applies a payment, such payment will be applied to each Periodic Payment in the order in which it became due, beginning with the oldest outstanding Periodic Payment, as follows: first to interest and then to principal due under the Note, and finally to Escrow Items. If all outstanding Periodic Payments then due are paid in full, any payment amounts remaining may be applied to late charges and to any amounts then due under this Security Instrument. If all sums then due under the Note and this Security Instrument are paid in full, any remaining payment amount may be applied, in Lender's sole discretion, to a future Periodic Payment or to reduce the principal balance of the Note.

If Lender receives a payment from Borrower in the amount of one or more Periodic Payments and the amount of any late charge due for a delinquent Periodic Payment, the payment may be applied to the delinquent payment and the late charge.

When applying payments, Lender will apply such payments in accordance with Applicable Law.

**(c) Voluntary Prepayments.** Voluntary prepayments will be applied as described in the Note.

**(d) No Change to Payment Schedule.** Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.**

**(a) Escrow Requirement; Escrow Items.** Except as provided by Applicable Law, Borrower must pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum of money to provide for payment of amounts due for all Escrow Items (the "Funds"). The amount of the Funds required to be paid each month may change during the term of the Loan. Borrower must promptly furnish to Lender all notices or invoices of amounts to be paid under this Section 3.

**(b) Payment of Funds; Waiver.** Borrower must pay Lender the Funds for Escrow Items unless Lender waives this obligation in writing. Lender may waive this obligation for any Escrow Item at any time. In the event of such waiver, Borrower must pay directly, when and where payable, the amounts due for any Escrow Items subject to the waiver. If Lender has waived the requirement to pay Lender the Funds for any or all Escrow Items, Lender may require Borrower to provide proof of direct payment of those items within such time period as Lender may require. Borrower's obligation to make such timely payments and to provide proof of payment is deemed to be a covenant and agreement of Borrower under this Security Instrument. If Borrower is obligated to pay Escrow Items directly pursuant to a waiver, and Borrower fails to pay timely the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to pay such amount and Borrower will be obligated to repay to Lender any such amount in accordance with Section 9.

Except as provided by Applicable Law, Lender may withdraw the waiver as to any or all Escrow Items at any time by giving a notice in accordance with Section 16; upon such withdrawal, Borrower must pay to Lender all Funds for such Escrow Items, and in such amounts, that are then required under this Section 3.

**(c) Amount of Funds; Application of Funds.** Except as provided by Applicable Law, Lender may, at any time, collect and hold Funds in an amount up to, but not in excess of, the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due in accordance with Applicable Law.

The Funds will be held in an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender will apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender may not charge Borrower for: (i) holding and applying the Funds; (ii) annually analyzing the escrow account; or (iii) verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on the Funds, Lender will not be required to pay Borrower any interest or earnings on the Funds. Lender will give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

**(d) Surplus; Shortage and Deficiency of Funds.** In accordance with RESPA, if there is a surplus of Funds held in escrow, Lender will account to Borrower for such surplus. If Borrower's Periodic Payment is delinquent by more than 30 days, Lender may retain the surplus in the escrow account for the payment of the Escrow Items. If there is a shortage or deficiency of Funds held in escrow, Lender will notify Borrower and Borrower will pay to Lender the amount necessary to make up the shortage or deficiency in accordance with RESPA.

Upon payment in full of all sums secured by this Security Instrument, or an earlier time if required by Applicable Law, Lender will promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower must pay (a) all taxes, assessments, charges, fines, and impositions attributable to the Property which have priority or may attain priority over this Security Instrument, (b) leasehold payments or ground rents on the Property, if any, and (c) Community Association Dues, Fees, and Assessments, if any. If any of these items are Escrow Items, Borrower will pay them in the manner provided in Section 3.

**ILLINOIS** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **(MERS)** **Form 3014** 07/2021
ICE Mortgage Technology, Inc.
Page 5 of 14
IL21EDEDL 1023
ILEDEDL (CLS)
03/06/2025 08:22 AM PST



ALLABABIDI-0022

LOAN #: 30012405314251

Borrower must promptly discharge any lien that has priority or may attain priority over this Security Instrument unless Borrower: (aa) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing under such agreement; (bb) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which Lender determines, in its sole discretion, operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (cc) secures from the holder of the lien an agreement satisfactory to Lender that subordinates the lien to this Security Instrument (collectively, the "Required Actions"). If Lender determines that any part of the Property is subject to a lien that has priority or may attain priority over this Security Instrument and Borrower has not taken any of the Required Actions in regard to such lien, Lender may give Borrower a notice identifying the lien. Within 10 days after the date on which that notice is given, Borrower must satisfy the lien or take one or more of the Required Actions.

**5. Property Insurance.**

**(a) Insurance Requirement; Coverages.** Borrower must keep the improvements now existing or subsequently erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes, winds, and floods, for which Lender requires insurance. Borrower must maintain the types of insurance Lender requires in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan, and may exceed any minimum coverage required by Applicable Law. Borrower may choose the insurance carrier providing the insurance, subject to Lender's right to disapprove Borrower's choice, which right will not be exercised unreasonably.

**(b) Failure to Maintain Insurance.** If Lender has a reasonable basis to believe that Borrower has failed to maintain any of the required insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and at Borrower's expense. Unless required by Applicable Law, Lender is under no obligation to advance premiums for, or to seek to reinstate, any prior lapsed coverage obtained by Borrower. Lender is under no obligation to purchase any particular type or amount of coverage and may select the provider of such insurance in its sole discretion. Before purchasing such coverage, Lender will notify Borrower if required to do so under Applicable Law. Any such coverage will insure Lender, but might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect, but not exceeding the coverage required under Section 5(a). Borrower acknowledges that the cost of the insurance coverage so obtained may significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender for costs associated with reinstating Borrower's insurance policy or with placing new insurance under this Section 5 will become additional debt of Borrower secured by this Security Instrument. These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**(c) Insurance Policies.** All insurance policies required by Lender and renewals of such policies: (i) will be subject to Lender's right to disapprove such policies; (ii) must include a standard mortgage clause; and (iii) must name Lender as mortgagee and/or as an additional loss payee. Lender will have the right to hold the policies and renewal certificates. If Lender requires, Borrower will promptly give to Lender proof of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy must include a standard mortgage clause and must name Lender as mortgagee and/or as an additional loss payee.

**(d) Proof of Loss; Application of Proceeds.** In the event of loss, Borrower must give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Any insurance proceeds, whether or not the underlying insurance was required by Lender, will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and determines that Lender's security will not be lessened by such restoration or repair.

If the Property is to be repaired or restored, Lender will disburse from the insurance proceeds any initial amounts that are necessary to begin the repair or restoration, subject to any restrictions applicable to Lender. During the subsequent repair and restoration period, Lender will have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Lender will not be required to pay Borrower any interest or earnings on such insurance proceeds unless Lender and Borrower agree in writing or Applicable Law requires otherwise. Fees for public adjusters, or other third parties, retained by Borrower will not be paid out of the insurance proceeds and will be the sole obligation of Borrower.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS) Form 3014 07/2021
ICE Mortgage Technology, Inc. Page 6 of 14 IL21EDEDL 1023
ILEDEDL (CLS)
03/08/2026 08:22 AM PST



ALLABABIDI-0023

LOAN #: 30012405314281

If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the insurance proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

(e) **Insurance Settlements; Assignment of Proceeds.** If Borrower abandons the Property, Lender may file, negotiate, and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 26 or otherwise, Borrower is unconditionally assigning to Lender (i) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note and this Security Instrument, and (ii) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, to the extent that such rights are applicable to the coverage of the Property. If Lender files, negotiates, or settles a claim, Borrower agrees that any insurance proceeds may be made payable directly to Lender without the need to include Borrower as an additional loss payee. Lender may use the insurance proceeds either to repair or restore the Property (as provided in Section 5(d)) or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower must occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and must continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent will not be unreasonably withheld, or unless extenuating circumstances exist that are beyond Borrower's control.

7. **Preservation, Maintenance, and Protection of the Property; Inspections.** Borrower will not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower must maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless Lender determines pursuant to Section 5 that repair or restoration is not economically feasible, Borrower will promptly repair the Property if damaged to avoid further deterioration or damage.

If insurance or condemnation proceeds are paid to Lender in connection with damage to, or the taking of, the Property, Borrower will be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower remains obligated to complete such repair or restoration.

Lender may make reasonable entries upon and inspections of the Property. If Lender has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender will give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower will be in Default if, during the Loan application process, Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan, including, but not limited to, overstating Borrower's income or assets, understating or failing to provide documentation of Borrower's debt obligations and liabilities, and misrepresenting Borrower's occupancy or intended occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**

(a) **Protection of Lender's Interest.** If: (i) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (ii) there is a legal proceeding or government order that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that has priority or may attain priority over this Security Instrument, or to enforce laws or regulations); or (iii) Lender reasonably believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and/or rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (I) paying any sums secured by a lien that has priority or may attain priority over this Security Instrument; (II) appearing in court; and (III) paying: (A) reasonable attorneys' fees and costs; (B) property inspection and valuation fees; and (C) other fees incurred for the purpose of protecting Lender's interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, exterior and interior inspections of the Property, entering the Property to make repairs, changing locks, replacing or boarding up doors and windows, draining water from pipes, eliminating building or other code violations or dangerous conditions, and having utilities turned on or off. Although Lender may take action

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   (MERS)   Form 3014   07/2021
ICE Mortgage Technology, Inc.
Page 7 of 14

IL21EDEDL   1023
ILEDEDL (CLS)
03/06/2025 08:22 AM PST



ALLABABIDI-0024

LOAN #: 30012405314261

under this Section 9, Lender is not required to do so and is not under any duty or obligation to do so. Lender will not be liable for not taking any or all actions authorized under this Section 9.

**(b) Avoiding Foreclosure; Mitigating Losses.** If Borrower is in Default, Lender may work with Borrower to avoid foreclosure and/or mitigate Lender's potential losses, but is not obligated to do so unless required by Applicable Law. Lender may take reasonable actions to evaluate Borrower for available alternatives to foreclosure, including, but not limited to, obtaining credit reports, title reports, title insurance, property valuations, subordination agreements, and third-party approvals. Borrower authorizes and consents to these actions. Any costs associated with such loss mitigation activities may be paid by Lender and recovered from Borrower as described below in Section 9(c), unless prohibited by Applicable Law.

**(c) Additional Amounts Secured.** Any amounts disbursed by Lender under this Section 9 will become additional debt of Borrower secured by this Security Instrument. These amounts may bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**(d) Leasehold Terms.** If this Security Instrument is on a leasehold, Borrower will comply with all the provisions of the lease. Borrower will not surrender the leasehold estate and interests conveyed or terminate or cancel the ground lease. Borrower will not, without the express written consent of the Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title will not merge unless Lender agrees to the merger in writing.

**10. Assignment of Rents.**

**(a) Assignment of Rents.** To the extent permitted by Applicable Law, in the event the Property is leased to, used by, or occupied by a third party ("Tenant"), Borrower is unconditionally assigning and transferring to Lender any Rents, regardless of to whom the Rents are payable. Borrower authorizes Lender to collect the Rents, and agrees that each Tenant will pay the Rents to Lender. However, Borrower will receive the Rents until (i) Lender has given Borrower notice of Default pursuant to Section 26, and (ii) Lender has given notice to the Tenant that the Rents are to be paid to Lender. This Section 10 constitutes an absolute assignment and not an assignment for additional security only.

**(b) Notice of Default.** To the extent permitted by Applicable Law, if Lender gives notice of Default to Borrower: (i) all Rents received by Borrower must be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender will be entitled to collect and receive all of the Rents; (iii) Borrower agrees to instruct each Tenant that Tenant is to pay all Rents due and unpaid to Lender upon Lender's written demand to the Tenant; (iv) Borrower will ensure that each Tenant pays all Rents due to Lender and will take whatever action is necessary to collect such Rents if not paid to Lender; (v) unless Applicable Law provides otherwise, all Rents collected by Lender will be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, reasonable attorneys' fees and costs, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments, and other charges on the Property, and then to any other sums secured by this Security Instrument; (vi) Lender, or any judicially appointed receiver, will be liable to account for only those Rents actually received; and (vii) Lender will be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

**(c) Funds Paid by Lender.** If the Rents are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds paid by Lender for such purposes will become indebtedness of Borrower to Lender secured by this Security Instrument pursuant to Section 9.

**(d) Limitation on Collection of Rents.** Borrower may not collect any of the Rents more than one month in advance of the time when the Rents become due, except for security or similar deposits.

**(e) No Other Assignment of Rents.** Borrower represents, warrants, covenants, and agrees that Borrower has not signed any prior assignment of the Rents, will not make any further assignment of the Rents, and has not performed, and will not perform, any act that could prevent Lender from exercising its rights under this Security Instrument.

**(f) Control and Maintenance of the Property.** Unless required by Applicable Law, Lender, or a receiver appointed under Applicable Law, is not obligated to enter upon, take control of, or maintain the Property before or after giving notice of Default to Borrower. However, Lender, or a receiver appointed under Applicable Law, may do so at any time when Borrower is in Default, subject to Applicable Law.

**(g) Additional Provisions.** Any application of the Rents will not cure or waive any Default or invalidate any other right or remedy of Lender. This Section 10 does not relieve Borrower of Borrower's obligations under Section 6.

This Section 10 will terminate when all the sums secured by this Security Instrument are paid in full.

**11. Mortgage Insurance.**

**(a) Payment of Premiums; Substitution of Policy; Loss Reserve; Protection of Lender.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower will pay the premiums required to maintain the Mortgage Insurance in effect. If Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, and (i) the Mortgage Insurance coverage required by Lender ceases for any reason to be available

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   (MERS)   Form 3014   07/2021
ICE Mortgage Technology, Inc.                              **Page 8 of 14**                              IL21EDEDL   1023
                                                                                                         ILEDEDL (CLS)
                                                                                                         03/06/2025 08:22 AM PST



ALLABABIDI-0025

LOAN #: 30012405314281

from the mortgage insurer that previously provided such insurance, or (ii) Lender determines in its sole discretion that such mortgage insurer is no longer eligible to provide the Mortgage Insurance coverage required by Lender, Borrower will pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Borrower will continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use, and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve will be non-refundable, even when the Loan is paid in full, and Lender will not be required to pay Borrower any interest or earnings on such loss reserve.

Lender will no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower will pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 11 affects Borrower's obligation to pay interest at the Note rate.

**(b) Mortgage Insurance Agreements.** Mortgage Insurance reimburses Lender for certain losses Lender may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy or coverage.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. Any such agreements will not: (i) affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan; (ii) increase the amount Borrower will owe for Mortgage Insurance; (iii) entitle Borrower to any refund; or (iv) affect the rights Borrower has, if any, with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 (12 U.S.C. § 4901 et seq.), as it may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter ("HPA"). These rights under the HPA may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**12. Assignment and Application of Miscellaneous Proceeds; Forfeiture.**

**(a) Assignment of Miscellaneous Proceeds.** Borrower is unconditionally assigning the right to receive all Miscellaneous Proceeds to Lender and agrees that such amounts will be paid to Lender.

**(b) Application of Miscellaneous Proceeds upon Damage to Property.** If the Property is damaged, any Miscellaneous Proceeds will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and Lender's security will not be lessened by such restoration or repair. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   (MERS)   Form 3014   07/2021
ICE Mortgage Technology, Inc.                                    Page 9 of 14                                    IL21EDEDL   1023
                                                                                                                ILEDEDL (CLS)
                                                                                                    03/06/2025 08:22 AM PST



Property of Cook County Clerk's Office

LOAN #: 30012405314281

**(c) Application of Miscellaneous Proceeds upon Condemnation, Destruction, or Loss in Value of the Property.** In the event of a total taking, destruction, or loss in value of the Property, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property (each, a "Partial Devaluation") where the fair market value of the Property immediately before the Partial Devaluation is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the Partial Devaluation, a percentage of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument unless Borrower and Lender otherwise agree in writing. The amount of the Miscellaneous Proceeds that will be so applied is determined by multiplying the total amount of the Miscellaneous Proceeds by a percentage calculated by taking (i) the total amount of the sums secured immediately before the Partial Devaluation, and dividing it by (ii) the fair market value of the Property immediately before the Partial Devaluation. Any balance of the Miscellaneous Proceeds will be paid to Borrower.

In the event of a Partial Devaluation where the fair market value of the Property immediately before the Partial Devaluation is less than the amount of the sums secured immediately before the Partial Devaluation, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not the sums are then due, unless Borrower and Lender otherwise agree in writing.

**(d) Settlement of Claims.** Lender is authorized to collect and apply the Miscellaneous Proceeds either to the sums secured by this Security Instrument, whether or not then due, or to restoration or repair of the Property, if Borrower (i) abandons the Property, or (ii) fails to respond to Lender within 30 days after the date Lender notifies Borrower that the Opposing Party (as defined in the next sentence) offers to settle a claim for damages. "Opposing Party" means the third party that owes Borrower the Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to the Miscellaneous Proceeds.

**(e) Proceeding Affecting Lender's Interest in the Property.** Borrower will be in Default if any action or proceeding begins, whether civil or criminal, that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a Default and, if acceleration has occurred, reinstate as provided in Section 20, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower is unconditionally assigning to Lender the proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property, which proceeds will be paid to Lender. All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order that Partial Payments are applied in Section 2(b).

**13. Borrower Not Released; Forbearance by Lender Not a Waiver.** Borrower or any Successor in Interest of Borrower will not be released from liability under this Security Instrument if Lender extends the time for payment or modifies the amortization of the sums secured by this Security Instrument. Lender will not be required to commence proceedings against any Successor in Interest of Borrower, or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument, by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities, or Successors in Interest of Borrower or in amounts less than the amount then due, will not be a waiver of, or preclude the exercise of, any right or remedy by Lender.

**14. Joint and Several Liability; Signatories; Successors and Assigns Bound.** Borrower's obligations and liability under this Security Instrument will be joint and several. However, any Borrower who signs this Security Instrument but does not sign the Note: (a) signs this Security Instrument to mortgage, grant, convey, and warrant such Borrower's interest in the Property under the terms of this Security Instrument; (b) signs this Security Instrument to waive any applicable inchoate rights such as dower and curtesy and any available homestead exemptions; (c) signs this Security Instrument to assign any Miscellaneous Proceeds, Rents, or other earnings from the Property to Lender; (d) is not personally obligated to pay the sums due under the Note or this Security Instrument; and (e) agrees that Lender and any other Borrower can agree to extend, modify, forbear, or make any accommodations with regard to the terms of the Note or this Security Instrument without such Borrower's consent and without affecting such Borrower's obligations under this Security Instrument.

Subject to the provisions of Section 19, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, will obtain all of Borrower's rights, obligations, and benefits under this Security Instrument. Borrower will not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.

**15. Loan Charges.**

**(a) Tax and Flood Determination Fees.** Lender may require Borrower to pay (i) a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan, and (ii) either (A) a one-time charge for flood zone determination, certification, and tracking services, or (B) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur that reasonably might

ILLINOIS – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **(MERS)** **Form 3014** 07/2021
ICE Mortgage Technology, Inc. Page 10 of 14
IL21EDEDL 1023
ILEDEDL (CLS)
03/06/2025 08:22 AM PST



ALLABABIDI-0027

**LOAN #: 30012405314281**

affect such determination or certification. Borrower will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency, or any successor agency, at any time during the Loan term, in connection with any flood zone determinations.

(b) **Default Charges.** If permitted under Applicable Law, Lender may charge Borrower fees for services performed in connection with Borrower's Default to protect Lender's interest in the Property and rights under this Security Instrument, including: (i) reasonable attorneys' fees and costs; (ii) property inspection, valuation, mediation, and loss mitigation fees; and (iii) other related fees.

(c) **Permissibility of Fees.** In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower should not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

(d) **Savings Clause.** If Applicable Law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**16. Notices; Borrower's Physical Address.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.

(a) **Notices to Borrower.** Unless Applicable Law requires a different method, any written notice to Borrower in connection with this Security Instrument will be deemed to have been given to Borrower when (i) mailed by first class mail, or (ii) actually delivered to Borrower's Notice Address (as defined in Section 16(c) below) if sent by means other than first class mail or Electronic Communication (as defined in Section 16(b) below). Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. If any notice to Borrower required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(b) **Electronic Notice to Borrower.** Unless another delivery method is required by Applicable Law, Lender may provide notice to Borrower by e-mail or other electronic communication ("Electronic Communication") if: (i) agreed to by Lender and Borrower in writing; (ii) Borrower has provided Lender with Borrower's e-mail or other electronic address ("Electronic Address"); (iii) Lender provides Borrower with the option to receive notices by first class mail or by other non-Electronic Communication instead of by Electronic Communication; and (iv) Lender otherwise complies with Applicable Law. Any notice to Borrower sent by Electronic Communication in connection with this Security Instrument will be deemed to have been given to Borrower when sent unless Lender becomes aware that such notice is not delivered. If Lender becomes aware that any notice sent by Electronic Communication is not delivered, Lender will resend such communication to Borrower by first class mail or by other non-Electronic Communication. Borrower may withdraw the agreement to receive Electronic Communications from Lender at any time by providing written notice to Lender of Borrower's withdrawal of such agreement.

(c) **Borrower's Notice Address.** The address to which Lender will send Borrower notice ("Notice Address") will be the Property Address unless Borrower has designated a different address by written notice to Lender. If Lender and Borrower have agreed that notice may be given by Electronic Communication, then Borrower may designate an Electronic Address as Notice Address. Borrower will promptly notify Lender of Borrower's change of Notice Address, including any changes to Borrower's Electronic Address if designated as Notice Address. If Lender specifies a procedure for reporting Borrower's change of Notice Address, then Borrower will report a change of Notice Address only through that specified procedure.

(d) **Notices to Lender.** Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated in this Security Instrument unless Lender has designated another address (including an Electronic Address) by notice to Borrower. Any notice in connection with this Security Instrument will be deemed to have been given to Lender only when actually received by Lender at Lender's designated address (which may include an Electronic Address). If any notice to Lender required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(e) **Borrower's Physical Address.** In addition to the designated Notice Address, Borrower will provide Lender with the address where Borrower physically resides, if different from the Property Address, and notify Lender whenever this address changes.

**ILLINOIS** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **(MERS)** **Form 3014** 07/2021
ICE Mortgage Technology, Inc.                                             Page 11 of 14                                             IL21EDEDL 1023
                                                                                                                                                ILEDEDL (CLS)
                                                                                                                                                03/06/2025 08:22 AM PST



ALLABABIDI-0028

LOAN #: 30912405314281

**17. Governing Law; Severability; Rules of Construction.** This Security Instrument is governed by federal law and the law of the State of Illinois. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. If any provision of this Security Instrument or the Note conflicts with Applicable Law (i) such conflict will not affect other provisions of this Security Instrument or the Note that can be given effect without the conflicting provision, and (ii) such conflicting provision, to the extent possible, will be considered modified to comply with Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence should not be construed as a prohibition against agreement by contract. Any action required under this Security Instrument to be made in accordance with Applicable Law is to be made in accordance with the Applicable Law in effect at the time the action is undertaken.

As used in this Security Instrument: (a) words in the singular will mean and include the plural and vice versa; (b) the word "may" gives sole discretion without any obligation to take any action; (c) any reference to "Section" in this document refers to Sections contained in this Security Instrument unless otherwise noted; and (d) the headings and captions are inserted for convenience of reference and do not define, limit, or describe the scope or intent of this Security Instrument or any particular Section, paragraph, or provision.

**18. Borrower's Copy.** One Borrower will be given one copy of the Note and of this Security Instrument.

**19. Transfer of the Property or a Beneficial Interest in Borrower.** For purposes of this Section 19 only, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender will not exercise this option if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender will give Borrower notice of acceleration. The notice will provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to, or upon, the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower and will be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to: (a) reasonable attorneys' fees and costs; (b) property inspection and valuation fees; and (c) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument.

**20. Borrower's Right to Reinstate the Loan after Acceleration.** If Borrower meets certain conditions, Borrower will have the right to reinstate the Loan and have enforcement of this Security Instrument discontinued at any time up to the later of (a) five days before any foreclosure sale of the Property, or (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate. This right to reinstate will not apply in the case of acceleration under Section 19.

To reinstate the Loan, Borrower must satisfy all of the following conditions: (aa) pay Lender all sums that then would be due under this Security Instrument and the Note as if no acceleration had occurred; (bb) cure any Default of any other covenants or agreements under this Security Instrument or the Note; (cc) pay all expenses incurred in enforcing this Security Instrument or the Note, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument or the Note; and (dd) take such action as Lender may reasonably require to assure that Lender's interest in the Property and/or rights under this Security Instrument or the Note, and Borrower's obligation to pay the sums secured by this Security Instrument or the Note, will continue unchanged.

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (aaa) cash; (bbb) money order; (ccc) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (ddd) Electronic Fund Transfer. Upon Borrower's reinstatement of the Loan, this Security Instrument and obligations secured by this Security Instrument will remain fully effective as if no acceleration had occurred.

**21. Sale of Note.** The Note or a partial interest in the Note, together with this Security Instrument, may be sold or otherwise transferred one or more times. Upon such a sale or other transfer, all of Lender's rights and obligations under this Security Instrument will convey to Lender's successors and assigns.

**22. Loan Servicer.** Lender may take any action permitted under this Security Instrument through the Loan Servicer or another authorized representative, such as a sub-servicer. Borrower understands that the Loan Servicer or other authorized representative of Lender has the right and authority to take any such action.

The Loan Servicer may change one or more times during the term of the Note. The Loan Servicer may or may not be the holder of the Note. The Loan Servicer has the right and authority to: (a) collect Periodic Payments and any other

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS) Form 3014 07/2021
ICE Mortgage Technology, Inc. Page 12 of 14 IL21EDEDL 1023
ILEDEDL (CLS)
03/06/2025 08:22 AM PST

Property of Cook County Clerk's Office

ALLABABIDI-0029

LOAN #: 30012405314281

amounts due under the Note and this Security Instrument; (b) perform any other mortgage loan servicing obligations; and (c) exercise any rights under the Note, this Security Instrument, and Applicable Law on behalf of Lender. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made, and any other information RESPA and other Applicable Law require in connection with a notice of transfer of servicing.

**23. Notice of Grievance.** Until Borrower or Lender has notified the other party (in accordance with Section 16) of an alleged breach and afforded the other party a reasonable period after the giving of such notice to take corrective action, neither Borrower nor Lender may commence, join, or be joined to any judicial action (either as an individual litigant or a member of a class) that (a) arises from the other party's actions pursuant to this Security Instrument or the Note, or (b) alleges that the other party has breached any provision of this Security Instrument or the Note. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 23. The notice of Default given to Borrower pursuant to Section 26(a) and the notice of acceleration given to Borrower pursuant to Section 19 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 23.

**24. Hazardous Substances.**

**(a) Definitions.** As used in this Section 24: (i) "Environmental Law" means any Applicable Laws where the Property is located that relate to health, safety, or environmental protection; (ii) "Hazardous Substances" include (A) those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law, and (B) the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, corrosive materials or agents, and radioactive materials; (iii) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (iv) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

**(b) Restrictions on Use of Hazardous Substances.** Borrower will not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower will not do, nor allow anyone else to do, anything affecting the Property that: (i) violates Environmental Law; (ii) creates an Environmental Condition; or (iii) due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects or could adversely affect the value of the Property. The preceding two sentences will not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

**(c) Notices; Remedial Actions.** Borrower will promptly give Lender written notice of: (i) any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (ii) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release, or threat of release of any Hazardous Substance; and (iii) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower will promptly take all necessary remedial actions in accordance with Environmental Law. Nothing in this Security Instrument will create any obligation on Lender for an Environmental Cleanup.

**25. Electronic Note Signed with Borrower's Electronic Signature.** If the Note evidencing the debt for this Loan is electronic, Borrower acknowledges and represents to Lender that Borrower: (a) expressly consented and intended to sign the electronic Note using an Electronic Signature adopted by Borrower ("Borrower's Electronic Signature") instead of signing a paper Note with Borrower's written pen and ink signature; (b) did not withdraw Borrower's express consent to sign the electronic Note using Borrower's Electronic Signature; (c) understood that by signing the electronic Note using Borrower's Electronic Signature, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms; and (d) signed the electronic Note with Borrower's Electronic Signature with the intent and understanding that by doing so, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**26. Acceleration; Remedies.**

**(a) Notice of Default.** Lender will give a notice of Default to Borrower prior to acceleration following Borrower's Default, except that such notice of Default will not be sent when Lender exercises its right under Section 19 unless Applicable Law provides otherwise. The notice will specify, in addition to any other information required by Applicable Law: (i) the Default; (ii) the action required to cure the Default; (iii) a date, not less than 30 days (or as otherwise specified by



LOAN #: 30012405314281

Applicable Law) from the date the notice is given to Borrower, by which the Default must be cured; (iv) that failure to cure the Default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (v) Borrower's right to reinstate after acceleration; and (vi) Borrower's right to deny in the foreclosure proceeding the existence of a Default or to assert any other defense of Borrower to acceleration and foreclosure.

(b) **Acceleration; Foreclosure; Expenses.** If the Default is not cured on or before the date specified in the notice, Lender may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender will be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 26, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument.

**27. Release.** Upon payment of all sums secured by this Security Instrument, Lender will release this Security Instrument. Borrower will pay any recordation costs associated with such release. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**28. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider signed by Borrower and recorded with it.

_____    03/06/2025 (Seal)
NUR ALLABABIDI                                              DATE

State of Illinois
County of COOK

This instrument was acknowledged before me on _MARCH 6, 2025_ (date) by NUR ALLABABIDI.

(Seal)

Notary Public State of Illinois
Official Seal
Nelida Urquiza
Comm. # 976901
My Commission Expires 8/17/2027



Signature of Notary Public

Lender: CrossCountry Mortgage, LLC
NMLS ID: 3029
Loan Originator: Richard Kimball
NMLS ID: 145114

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  (MERS)  Form 3014  07/2021
ICE Mortgage Technology, Inc.                           Page 14 of 14                           IL21EDEDL  1023
                                                                                                ILEDEDL (CLS)
                                                                                                03/06/2025 08:22 AM PST

ALLABABIDI-0031

LEGAL DESCRIPTION

LOT SIXTY NINE (69) IN ST. JOSEPH MANOR, BEING A RESUBDIVISION OF PARTS OF LOTS 2, 3 AND 4 IN GERHARD H. FRANZEN ESTATE DIVISION OF THE NORTH EAST QUARTER (1/4) OF THE SOUTH WEST QUARTER (1/4) OF SECTION 11, TOWNSHIP 40 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO PLAT OF ST. JOSEPH MANOR, REGISTERED IN THE OFFICE OF THE REGISTRAR OF TITLES OF COOK COUNTY, ILLINOIS, ON OCTOBER 14, 1958, AS DOCUMENT NUMBER 1823113.

Address commonly known as:
8516 W Winona St
Chicago, IL 60656

PIN#:  12-11-314-023-0000

Property of Cook County Clerk's Office

ALLABABIDI-0032

LOAN #: 30012405314281

## FIXED INTEREST RATE RIDER

THIS Fixed Interest Rate Rider is made this **6th** day of **March, 2025** and is incorporated into and shall be deemed to amend and supplement the Mortgage (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **CrossCountry Mortgage, LLC, a Limited Liability Company**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**8516 W Winona St**
**Chicago, IL 60656**

**Fixed Interest Rate Rider COVENANT.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that DEFINITION ( **D** ) of the Security Instrument is deleted and replaced by the following:

( **D** ) "Note" means the promissory note dated **March 6, 2025.** and signed by each Borrower who is legally obligated for the debt under that promissory note, that is in either (i) paper form, using Borrower's written pen and ink signature, or (ii) electronic form, using Borrower's adopted Electronic Signature in accordance with the UETA or E-SIGN, as applicable. The Note evidences the legal obligation of each Borrower who signed the Note to pay Lender **TWO HUNDRED FIFTEEN THOUSAND AND NO/100\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*** Dollars (U.S. **$215,000.00** ) plus interest at the rate of **7.250 %.** Each Borrower who signed the Note has promised to pay this debt in regular monthly payments and to pay the debt in full not later than **April 1, 2055.**

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Fixed Interest Rate Rider.



_____    03/06/2025  (Seal)
**NUR ALLABABIDI**                                    DATE

IL – Fixed Interest Rate Rider
ICE Mortgage Technology, Inc.

IL21IRRCONRLU   1122
ILIRRCONRLU (CLS)
03/06/2025 08:22 AM PST

ALLABABIDI-0033

UNITED STATES DISTRICT COURT — NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Allababidi v. CrossCountry Mortgage, LLC, et al. — Case No. 1:26-cv-_____**

# EXHIBIT E

## Wyoming Secretary of State Filing
## Information — Filing ID 2024-001505519

*Organizer: Sean L. Robertson, 201 E. Veterans Pkwy, Unit 14, Yorkville, IL 60560 Registered Agent: Registered Agents Inc., 30 N. Gould St., Suite R, Sheridan, WY 82801*

**Complaint Cross-Reference: Complaint ¶¶ 14–15 (Parties — Robertson & Gateville); ¶ 21 (Transaction 2); ¶¶ 29–31 (Ghost Tenant Paradox); Count I (RICO Enterprise); Count II (Aiding & Abetting)**

### EVIDENTIARY BASIS AND RELEVANCE PROFFER

**EVIDENTIARY PURPOSE:**

This exhibit is the official Wyoming Secretary of State filing record (Filing ID 2024-001505519) for '**Wyoming 8516 West Winnoa, LLC.**' The filing identifies **Sean L. Robertson** as the **Organizer** — the person who drafted, signed, and filed the Articles of Organization with the Wyoming Secretary of State. Robertson's physical law office address (201 E. Veterans Parkway, Unit 14, Yorkville, IL 60560) appears as the Organizer address. A commercial registered agent service — **Registered Agents Inc.**, 30 N. Gould Street, Suite R, Sheridan, WY 82801 — was interposed as the LLC's nominal registered agent to create the appearance of a Wyoming presence. This exhibit destroys Robertson's claim that he does 'not represent' anyone in this matter: he did not merely represent the entity — he **created** it.

**RELEVANT LEGAL AUTHORITY:**

Under Wyo. Stat. § 17-29-201, the '**Organizer**' is the person who executes and files the Articles of Organization for a Wyoming LLC. The Organizer's name and address are permanently recorded with the Secretary of State. Under 18 U.S.C. § 1962(c), a RICO enterprise requires an association-in-fact with a common purpose. An attorney who personally organizes a shell LLC through the Wyoming Secretary of State, lists his own office as the Organizer address, hires a commercial agent to mask the origin, and then denies involvement demonstrates **consciousness of guilt**. *United States v. Turkette*, 452 U.S. 576, 583 (1981). Filing records are self-authenticating public records under Fed. R. Evid. 902(1) and (4).

**APPLICATION TO CASE FACTS:**

The filing records prove: (1) Robertson is the named **Organizer** who drafted and filed the Articles of Organization — not merely a registered agent or counsel of record; (2) his physical law office address (201 E. Veterans Pkwy, Unit 14, Yorkville, IL 60560) is permanently stamped on state records as the Organizer address; (3) a commercial registered agent (Registered Agents Inc., Sheridan, WY) was hired to interpose a Wyoming facade; (4) Robertson had direct, personal involvement in creating the concealment vehicle despite his February 17, 2026 email denial (Exhibit F); (5) the LLC name deliberately misspells 'Winona' as 'Winnoa' — an obfuscation technique visible in the filing data.

**PROBATIVE CONCLUSION:**

Exhibit E is the **attribution evidence** — official state records permanently naming Sean Robertson as the person who created 'Wyoming 8516 West Winnoa, LLC.' Unlike a registered agent designation (which can be changed), the Organizer designation is **immutable** — it cannot be amended or removed. Robertson's name is on the birth certificate of the shell LLC. Combined with his email denial (Exhibit F), it establishes that Robertson created the fraud vehicle, used it to launder title, and then lied about it.

---

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery or maintained in the ordinary course of business.*

*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

*Exhibit E Cover Page — Allababidi v. CrossCountry Mortgage, LLC, et al. — March 06, 2026*

ALLABABIDI-0034

**Wyoming Secretary of State**

Herschler Bldg East, Ste.100 & 101

Cheyenne, WY 82002-0020
Ph. 307-777-7311

**Secretary of State**

For Office Use Only

**WY Secretary of State**
**FILED: Aug 13 2024 10:42AM**
**Original ID: 2024-001505519**

# Close Limited Liability Company
# Articles of Organization

I. **The name of the close limited liability company is:**
Wyoming 8516 West Winnoa LLC

II. **The name and physical address of the registered agent of the close limited liability company is:**
Registered Agents Inc
30 N Gould St Ste R
Sheridan, WY 82801

III. **The mailing address of the close limited liability company is:**
30 N. Gould Street
Suite R
Sheridan, WY 82801

IV. **The principal office address of the close limited liability company is:**
30 N. Gould Street
Suite R
Sheridan, WY 82801

V. **The organizer of the close limited liability company is:**
Sean L. Robertson
201 E. Veterans Parkway, Unit 14, Yorkville, Illinois 60560

Signature: *Sean L Robertson*                     Date: **08/13/2024**

Print Name:      **Sean L Robertson**

Title:           **Managing Partner**

Email:           **sean@gatevillelawfirm.com**

Daytime Phone #:  **630.780.1034**

ALLABABIDI-0035

**Wyoming Secretary of State**

Herschler Bldg East, Ste.100 & 101

Cheyenne, WY 82002-0020
Ph. 307-777-7311

---

☑ I am the person whose signature appears on the filing; that I am authorized to file these documents on behalf of the business entity to which they pertain; and that the information I am submitting is true and correct to the best of my knowledge.

☑ I am filing in accordance with the provisions of the Wyoming Limited Liability Company Act, (W.S. 17-29-101 through 17-29-1105) and Registered Offices and Agents Act (W.S. 17-28-101 through 17-28-111).

☑ I understand that the information submitted electronically by me will be used to generate Articles of Organization that will be filed with the Wyoming Secretary of State.

☑ I intend and agree that the electronic submission of the information set forth herein constitutes my signature for this filing.

☑ I have conducted the appropriate name searches to ensure compliance with W.S. 17-16-401.

☑ I consent on behalf of the business entity to accept electronic service of process at the email address provided with Article IV, Principal Office Address, under the circumstances specified in W.S. 17-28-104(e).

**Notice Regarding False Filings: Filing a false document could result in criminal penalty and prosecution pursuant to W.S. 6-5-308.**

---

### W.S. 6-5-308. Penalty for filing false document.

(a) A person commits a felony punishable by imprisonment for not more than two (2) years, a fine of not more than two thousand dollars ($2,000.00), or both, if he files with the secretary of state and willfully or knowingly:

(i) Falsifies, conceals or covers up by any trick, scheme or device a material fact;

(ii) Makes any materially false, fictitious or fraudulent statement or representation; or

(iii) Makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry.

---

☑ I acknowledge having read W.S. 6-5-308.

**Filer is:**   ☐ An Individual      ☑ An Organization

The Wyoming Secretary of State requires a natural person to sign on behalf of a business entity acting as an incorporator, organizer, or partner. The following individual is signing on behalf of all Organizers, Incorporators, or Partners.

**Filer Information:**
**By submitting this form I agree and accept this electronic filing as legal submission of my Articles of Organization.**

| | | |
|---|---|---|
| **Signature:** | *Sean L Robertson* | Date:  **08/13/2024** |
| Print Name: | **Sean L Robertson** | |
| Title: | **Managing Partner** | |
| Email: | **sean@gatevillelawfirm.com** | |
| Daytime Phone #: | **630.780.1034** | |

ALLABABIDI-0056



**Secretary of State**

# Consent to Appointment by Registered Agent

**Registered Agents Inc**, whose registered office is located at **30 N Gould St Ste R, Sheridan, WY 82801**, voluntarily consented to serve as the registered agent for **Wyoming 8516 West Winnoa LLC** and has certified they are in compliance with the requirements of W.S. 17-28-101 through W.S. 17-28-111.

I have obtained a signed and dated statement by the registered agent in which they voluntarily consent to appointment for this entity.

Signature:     *Sean L Robertson*       Date:   **08/13/2024**

Print Name:     **Sean L Robertson**

Title:     **Managing Partner**

Email:     **sean@gatevillelawfirm.com**

Daytime Phone #:     **630.780.1034**

ALLABABIDI-0037

# STATE OF WYOMING
## Office of the Secretary of State

I, CHUCK GRAY, Secretary of State of the State of Wyoming, do hereby certify that the filing requirements for the issuance of this certificate have been fulfilled.

CERTIFICATE OF ORGANIZATION

**Wyoming 8516 West Winnoa LLC**

I have affixed hereto the Great Seal of the State of Wyoming and duly executed this official certificate at Cheyenne, Wyoming on this **13th** day of **August**, **2024** at **10:42 AM.**

Remainder intentionally left blank.



Filed Date: 08/13/2024

_____
Secretary of State

Filed Online By:

Sean L Robertson

on 08/13/2024

ALLABABIDI-0058

UNITED STATES DISTRICT COURT — NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Allababidi v. CrossCountry Mortgage, LLC, et al. — Case No. 1:26-cv-_____**

# EXHIBIT F

## Sean Robertson Email — Denial of Representation (February 17, 2026)

*"We do not represent anyone . . ." — Sent after receiving Notice of Filing & Litigation Hold Demand*

**Complaint Cross-Reference: Complaint ¶¶ 14–15 (Parties — Robertson & Gateville); ¶ 30 (Robertson Denial); Count I (RICO — Consciousness of Guilt); Count II (Aiding & Abetting)**

### EVIDENTIARY BASIS AND RELEVANCE PROFFER

**EVIDENTIARY PURPOSE:**

This exhibit is the email sent by Defendant Sean Robertson on February 17, 2026, in which he states: '**We do not represent anyone involved in this matter.**' This denial was sent in response to Plaintiff's Notice of Filing & Litigation Hold Demand. The denial is demonstrably false — Robertson is listed as the **Organizer** of the Wyoming LLC on official Secretary of State records (Filing ID 2024-001505519, Exhibit E), his Gateville Law Firm address appears as the Organizer address, and the deed in Transaction 2 (Exhibit B) was prepared by counsel associated with his firm.

**RELEVANT LEGAL AUTHORITY:**

A party's own statement, when inconsistent with known facts, constitutes an admission by a party-opponent under Fed. R. Evid. 801(d)(2)(A). A false denial of involvement, when contradicted by documentary evidence, supports an inference of **consciousness of guilt**. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (false explanation is affirmative evidence of guilt). Under the crime-fraud exception, attorney-client privilege does not shield communications in furtherance of a crime or fraud. *Clark v. United States*, 289 U.S. 1, 15 (1933).

**APPLICATION TO CASE FACTS:**

The email proves: (1) Robertson was put on notice of his involvement and litigation hold obligations; (2) his response was a flat denial of representation; (3) this denial is contradicted by Exhibit E (Robertson named as Organizer on Wyoming SOS records, his office listed as Organizer address) and Exhibit B (deed prepared through his firm's network); (4) the denial demonstrates consciousness of guilt — an innocent attorney would clarify the scope of engagement, not categorically deny any connection; (5) the juxtaposition of expertise (estate planning attorney with entity-formation capabilities) and claimed confusion supports willful blindness.

**PROBATIVE CONCLUSION:**

Exhibit F is the **consciousness-of-guilt evidence** — Robertson's own words contradicted by his own state filing records. The Exhibit E/F pairing creates an irrebuttable inference: Robertson organized the shell LLC as the named Organizer on Wyoming Secretary of State records, at his firm's address, and then denied any involvement when confronted. This supports RICO scienter and aiding-and-abetting liability.

---

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery or maintained in the ordinary course of business.*

*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

*Exhibit F Cover Page — Allababidi v. CrossCountry Mortgage, LLC, et al. — March 06, 2026*



**Ehab Hilfiger <defcon5ready@gmail.com>**

## Re: NOTICE OF FILING & LITIGATION HOLD DEMAND ▇▇▇▇▇

**Sean Robertson** <sean@gatevillelawfirm.com>                    Tue, Feb 17, 2026 at 5:10 PM
To: Ehab Hilfiger <defcon5ready@gmail.com>, "legal@myccmortgage.com" <legal@myccmortgage.com>,
"Alex.Ragon@myccmortgage.com" <Alex.Ragon@myccmortgage.com>, "HumanResourcesTeam@myccmortgage.com"
<HumanResourcesTeam@myccmortgage.com>, "corporatelegal@oldrepublictitle.com"
<corporatelegal@oldrepublictitle.com>, "ILclaims@oldrepublictitle.com" <ILclaims@oldrepublictitle.com>, Gateville Law Firm
<info@gatevillelawfirm.com>

Hello,

We do not represent anyone in this matter, and we cannot accept service of process or anything
else. You shall make sure you properly serve the Plaintiff.

Thank you,

Sean



**Sean Robertson**
**Managing Partner**



**Sean@GatevilleLawFirm.Com**
**Direct Line: (630)553-3138**

**Office: (630)780-1034**
**Fax: (888)779-5412**

**201 E Veterans Parkway, Ste 14, Yorkville, IL 60560**

**www.GatevilleLawFirm.com**



ALLABABIDI-0040

are currently on the rise.  We WILL NOT e-mail wiring instructions.  If you receive an email containing new or corrected wire transfer instructions, please call the title company or Sean Robertson directly to verify the information prior to sending funds.  We are not responsible for any wires sent by you to an incorrect bank account.

This message (including any attachments) is intended only for the use of the individual or entity to which it is addressed and may contain information that is non-public, proprietary, privileged, confidential, and exempt from disclosure under applicable law or may constitute as attorney work product. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, notify us immediately by telephone at (630) 780-1034 and destroy this message if a facsimile or delete this message immediately if this is an electronic communication.

---

**From:** Ehab Hilfiger <defcon5ready@gmail.com>
**Sent:** Tuesday, February 17, 2026 3:58 PM
**To:** legal@myccmortgage.com <legal@myccmortgage.com>; Alex.Ragon@myccmortgage.com <Alex.Ragon@myccmortgage.com>; HumanResourcesTeam@myccmortgage.com <HumanResourcesTeam@myccmortgage.com>; corporatelegal@oldrepublictitle.com <corporatelegal@oldrepublictitle.com>; ILclaims@oldrepublictitle.com <ILclaims@oldrepublictitle.com>; Gateville Law Firm <info@gatevillelawfirm.com>
**Cc:** Ehab Hilfiger <defcon5ready@gmail.com>
**Subject:** NOTICE OF FILING & LITIGATION HOLD DEMAND ████████████████
████████

**To the Office of the General Counsel and Compliance Division:**

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████
████████████████████████████████████████
████████████████████████████

**Relevance to Recipients:** Your institutions are identified in the judicial record regarding the origination, underwriting, and title insurance of a mortgage encumbering the property at 8516 W. Winona St., Chicago, IL (Loan No. 30012405314281).
████████████████████████████████████████████████████████

**Litigation Hold Demand:** As non-party entities implicated in active federal litigation, you are hereby placed on notice of your duty to preserve all evidence relevant to this matter. This obligation extends to all hard copy and electronic data (ESI), including but not limited to:

- Underwriting files, internal communications, and risk assessment memoranda;

- Title commitments, search abstracts, and closing instructions;

- Any Suspicious Activity Report (SAR) determinations or related compliance logs regarding the subject property or borrower.

Failure to preserve these records may result in sanctions under Federal Rule of Civil Procedure 37(e) and carries potential criminal liability for obstruction of justice under 18 U.S.C. § 1519.

ALLABABIDI-0041